07-4895-cr
United States v. Bengis

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: December 10, 2008                    Decided: January 4, 2011)

Docket No. 07-4895-cr

_____

UNITED STATES OF AMERICA,

*Plaintiff-Appellant*,

— v.—

ARNOLD MAURICE BENGIS, JEFFREY NOLL, and DAVID BENGIS

*Defendants-Appellees*.

_____

Before:

FEINBERG, CABRANES, and HALL, *Circuit Judges*.

_____

The United States of America appeals from two orders of the United States District Court for the Southern District of New York (Kaplan, *J.*) denying its applications for a restitution award in favor of the Republic of South Africa, pursuant to, first, the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, and second, the Victim and Witness Protection Act of 1982

("VWPA"), 18 U.S.C. § 3663. We hold that South Africa: (1) has a property interest in rock lobsters unlawfully harvested from its waters, and (2) is a victim, as defined by the MVRA and VWPA, eligible to receive restitution. Accordingly, restitution is owed to South Africa.

VACATED AND REMANDED.

————————————

MARCUS A. ASNER, Assistant United States Attorney, (Celeste L. Koeleveld, Assistant United States Attorney, *of counsel*), for Michael J. Garcia, United States Attorney for the Southern District of New York, New York, New York, *for Plaintiff-Appellant.*

BARRY A. BOHRER, Morvillo, Abramowitz, Grand, Iason, Anello & Bohrer, P.C., New York, New York (Barbara L. Trencher, *on the brief*, James Darrow, *of counsel*), *for Defendants-Appellees.*

————————————

HALL, *Circuit Judge*:

The United States of America appeals from two orders of the United States District Court for the Southern District of New York (Kaplan, *J.*) denying its applications for a restitution award in favor of the Republic of South Africa pursuant to, first, the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, and second, the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663. In its first order, the district court denied the government's application for a restitution award under the MVRA, adopting the magistrate judge's report and recommendation, and holding that South Africa had no property interest in either the lobsters that the defendants took from South African waters or in any tax or other form of revenue as a result of the defendants' breach of South Africa's conservation regulatory laws. In its second order, the district court denied the government's application for a restitution award under the VWPA, again

2

adopting the magistrate judge's report and recommendation. The district court held that in addition to its failure to prove that the illegally harvested lobsters were the property of South Africa, the government failed to demonstrate that South Africa was a "victim," i.e., how it suffered any direct or proximate harm as a result of the defendants' conduct. The district court further held that, even if restitution was permissible as a matter of law, "the complication and prolonging of the sentencing process resulting from the fashioning of the order of restitution under this section would outweigh the need to provide restitution to the Republic of South Africa." For the reasons that follow, we hold that South Africa: (1) has a property interest in rock lobsters unlawfully harvested from its waters, (2) is a victim for restitution purposes, as defined by the MVRA and VWPA, and (3) whatever the complexity in fashioning a restitution order in this case, it is insufficient to preclude entry of such an order under the MVRA. Accordingly, the judgments of the district court are VACATED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

## I.      Background

From 1987 to 2001, Arnold Bengis, Jeffrey Noll and David Bengis (jointly, "defendants") engaged in an elaborate scheme to illegally harvest large quantities of South Coast and West Coast rock lobsters in South African waters for export to the United States in violation of both South African and U.S. law. Arnold Bengis was the Managing Director and Chairman of Hout Bay Fishing Industries, Ltd. ("Hout Bay"), a fishing and fish-processing operation in Capetown, South Africa, through which defendants principally organized their conspiracy to capture, process and export lobster to the United States. Jeffrey Noll and David Bengis were presidents of two U.S. corporations that imported, processed, packed, and distributed the fish within the United States on behalf of Hout Bay. At all relevant times, the harvesting, processing and exporting of South Coast and West Coast

3

rock lobsters from South Africa was governed under South African law principally by the Marine Living Resources Act 18 of 1998 ("MLRA"), the regulations promulgated under the MLRA, and the Convention on the Conservation of Marine Living Resources. The South African Department of Marine and Coastal Management regulated the harvesting, processing and exporting of fish from South Africa's waters by, *inter alia*, establishing fishing season quotas and issuing harvesting and exporting permits. Defendants caused Hout Bay to harvest South Coast and West Coast rock lobsters in amounts exceeding authorized quotas and to export those lobsters to the United States.

In May 2001, South African authorities seized and opened a container of unlawfully harvested fish and alerted U.S. authorities that another container was scheduled to arrive in the United States soon thereafter. Following the May 2001 seizure, the defendants continued to attempt to avoid detection and to perpetuate their scheme.

Although South African authorities obtained arrest warrants for defendants, after concluding that defendants' financial resources and presence outside of South Africa rendered them "beyond the reach of South African authorities," *Morrison Decl.*, App. 324, South Africa declined to charge, much less prosecute, them. Instead, South Africa focused its prosecution on the "South African-based entities involved in the scheme," including Hout Bay, its operational manager, Collin van Schalkwyk, several West Coast lobster fisherman with whom Hout Bay had contracted, and fourteen fisheries inspectors who had taken bribes during the course of the scheme. *Id.* at 325. In April 2002, Arnold Bengis returned to South Africa to enter a plea of guilty on behalf of Hout Bay for, *inter alia*, over-fishing of South and West Coast rock lobster in violation of the MLRA. According to its plea agreement with the South African government, Hout Bay paid a fine of 12 million Rand (approximately $1.2 million in April 2002) and forfeited two fishing boats and the

4

contents of the container seized by the government. The South African government also cooperated with the United States in its investigation and prosecution of the Bengises and Noll for their violation of U.S. law.

Following their indictments in the United States, Arnold Bengis and Jeffrey Noll pleaded guilty to: (i) conspiracy to violate the Lacey Act and to commit smuggling in violation of 18 U.S.C. § 371; and (ii) violations of the Lacey Act, 16 U.S.C. § 3372(a)(2)(A).[1] David Bengis pleaded guilty to the conspiracy charge only. In 2004, the defendants were sentenced to various terms of imprisonment and supervised release and together forfeited a total of $13,300,000 to the United States. Although the defendants' plea agreements acknowledged that restitution might be ordered, with the parties' consent, the district court deferred the restitution hearing to a later date.

Following the court's decision to hold a restitution hearing, the United States submitted a report prepared by the Ocean and Land Resource Assessment Consultants ("OLRAC"), a group of experts commissioned by the South African Department of Marine and Coastal Management, setting out two different methods for calculating restitution. OLRAC Method I focused on the cost of remediation, i.e., what it would cost South Africa to restore the rock lobster fishery to the level it would have been had the defendants not engaged in overharvesting (the "catch forfeit" amount).[2]

---

[1] The Lacey Act provides in pertinent part: "It is unlawful for any person . . . (2) to import, export, transport, sell, receive, acquire, or purchase in interstate or foreign commerce– (A) any fish or wildlife taken, possessed, transported, or sold in violation of any law or regulation of any State or in violation of any foreign law." 16 U.S.C. § 3372(a)(2)(A). The term "fish or wildlife" is defined to include crustaceans, such as lobsters. 16 U.S.C. § 3371(a).

[2] OLRAC Method I also included an additional cost measure, "overharvesting costs," which measured the costs incurred by Hout Bay's competitors as a result of Hout Bay's overharvesting. The government elected not to seek the amount of "overharvesting costs" in its application for restitution because those costs were not borne directly by South Africa, but rather by Hout Bay's competitors.

OLRAC estimated restitution using the catch forfeit amount to be $46,775,150. OLRAC Method II focused on the market value of the overharvested fish and was calculated by multiplying the quantity of overharvested fish by the prevailing market price. OLRAC estimated restitution using OLRAC Method II to be $61,932,630.

The government recommended that the district court adopt OLRAC Method I restitution amount—the lower of the two calculations—which totaled $39,700,000 after deducting the value of the fine and vessels previously forfeited by Hout's Bay to South Africa. Alternatively, the government recommended adopting the OLRAC Method II calculation totaling $54,900,000 after those same deductions. The district court held its decision on a restitution award in abeyance pending the outcome of settlement discussions, which ended unsuccessfully. Consequently, on June 2, 2006, the district court referred the restitution issues to a magistrate judge for a report and recommendations.

## II.    The Decisions Below

In separate orders, the district court denied the government's request for restitution for South Africa under the MVRA, *United States v. Bengis*, 03 Crim. 308, 2007 WL 24170, at *1 (S.D.N.Y. Jan. 29, 2007), and the VWPA, *United States v. Bengis*, 03 Crim. 308, 2007 WL 2669315, at *2 (S.D.N.Y. Sept. 12, 2007). In each order, the district court adopted by reference the reasoning in the report and recommendation ("R&R") of the magistrate judge.

6

A.     The MVRA

With respect to the MVRA, the R&R concluded that pursuant to the limited categories of crimes for which restitution is mandatory, South Africa is entitled to restitution in this case only if the conduct to which defendants plead guilty constitutes "an offense against property" under Title 18 of the United States Code, 8 U.S.C. § 3663(A)(c)(1)(A)(ii). *United States v. Bengis*, 03 Crim. 308, 2006 WL 3735654, at *2 (S.D.N.Y. Dec. 19, 2006). Under our precedents, the R&R continued, the definition of "property" is limited to "tangible property," *see United States v. Cummings*, 189 F. Supp. 2d 67, 74 (S.D.N.Y. 2002), and not "purely regulatory" interests in which "the nature of [the] property cannot not be economic," *Cleveland v. United States*, 531 U.S. 12, 13 (2000). *Id.* at *3.

Here, the magistrate judge concluded, South Africa confronts two obstacles. First, under South African law, the state does not "own" the fish in its territorial waters. *Id.* at *6. "Defendants' acts of taking fish from South African waters that the South African government did not own," therefore "does not provide the basis for any offenses against South African property that would trigger restitution under the MVRA." *Id.* at *7. Moreover, because "the South African laws that provide the basis for defendants' underlying violations here involve no type of taxes or significant revenue for South Africa," the government cannot claim a property interest in a "tax or other form of revenue" connected to defendant's activity. *Id.* at 8 (distinguishing *Pasquantino v. United States*, 544 U.S. 349, 355-57 (2005), which concluded that  the Canadian government holds a property interest in the substantial liquor tax revenue that defendants avoided paying as a result of their smuggling scheme).

Finally, the district court rejected the argument that defendant's violation of the Lacey Act, itself, constituted an offense against property pursuant to Title 18. *Id.* at *8. Like the MLRA, the

7

Lacey Act, 16 U.S.C. § 3372(a)(2)(A) (criminalizing trade in "any fish or wildlife taken, possessed, transported, or sold . . . in violation of any foreign law."), was enacted for regulatory, and not economic, purposes, as a result of which a violation thereof is not an offense against property. *Id.* at \*9.

        B.     <u>The VWPA</u>

Having denied mandatory restitution under the MVRA, the district court considered and rejected discretionary restitution under the VWPA, adopting the magistrate judge's conclusion that South Africa was not a "victim" of defendants' crime. *United States v. Bengis*, 03 Crim. 308, 2007 WL 2669315, at \*1. In order to be a victim for the purposes of the VWPA, the loss sustained must be "'caused by the offense of conviction.'" *United States v. Bengis*, 03 Crim. 308, 2007 WL 1450381, at \*3 (S.D.N.Y. May 17, 2007) (quoting *United States v. Silkowski*, 32 F.3d 682, 689 (2d Cir. 1994)). The underlying violation of the Lacey Act—the crime to which defendants pleaded guilty—related to the *trade* in illegally obtained lobsters and not the overfishing of lobster in South African waters. That is, the district court concluded, "[i]t was not necessary for the government to have proved that the defendants . . were the ones who took the fish in violation of South African law." *United States v. Bengis*, 03 Crim. 308, 2007 WL 2669315, at \*1. Because the government's loss theories were predicated on the injury associated with the consequences of defendants' <u>overfishing</u>—as opposed to its <u>trading</u>—and the overfishing of lobster is not directly related to any of the required criminal conduct under the statutes to which defendants plead guilty, the district court concluded that South Africa is not a victim under the VWPA. *United States v. Bengis*, 03 Crim. 308, 2007 WL 1450381, at \*7.

8

Finally, the district court observed that, if discretionary restitution were available, calculating South Africa's injury would involve "complex issues of foreign law as well as intricate questions of fact," as a result of which "extensive further proceedings would be required." *United States v. Bengis*, 03 Crim. 308, 2007 WL 2669315, at *2. Accordingly, the district court held that, even if a restitution order pursuant to the VWPA were permissible, "the complication and prolongation of the sentencing process resulting from the fashioning of an order of restitution under this section would outweigh the need to provide restitution" in this case. *Id.*

## III. Discussion

On appeal, the government challenges the district court's conclusions that South Africa had no property interest in the overharvested lobsters and that it was not directly harmed as a result of the defendants' illegal scheme.

We review a district court's decision to deny an order of restitution for abuse of discretion. *Nordwind v. Rowland*, 584 F.3d 420, 429 (2d Cir. 2009). "To identify such abuse, we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009) (per curiam) (internal quotation marks removed).

A.     South Africa's property interest in the illegally harvested rock lobsters

The MVRA provides for mandatory restitution in all sentencing proceedings for convictions of any offense that is, *inter alia*, "an offense against property under [Title 18] . . . in which an identifiable victim or victims has suffered a . . . pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)(ii)-(c)(1)(B). Accordingly, the threshold question is whether South Africa has a property interest in the illegally harvested rock lobsters. We conclude that South Africa has a property right in illegally harvested rock lobsters.

Under South African law the rock lobsters may be harvested lawfully pursuant to a regulatory scheme administered by the Department of Marine and Coastal Management. Furthermore, under South African law, lobsters caught illegally are not the property of those who caught them, MLRA § 44(2), and the South African government is authorized to seize illegally harvested lobsters, sell them, and retain the proceeds, §§ 51(3)(c)(iii), 63(1)(b), 68(1). Put differently, lobsters possessed in violation of the regulatory scheme do not become property of the possessors, rather they are subject to seizure and sale by the government of South Africa. Under this logic, the moment a fisherman pulls an illegally harvested lobster out of the sea, a property right to seize that lobster is vested in the government of South Africa. Evading seizure of overharvested lobsters thus deprives South Africa of an opportunity to sell those illegally captured lobsters at market price and retain the proceeds, representing an economic loss to South Africa each time an illegally harvested lobster goes unseized. South Africa's interest in those illegally harvested lobsters, therefore, goes beyond a mere regulatory interest in administering the fishing activities in its waters.

Contrary to the District Court's conclusion, the Supreme Court's holding in *Pasquantino*—and not *Cleveland*—provides the closest analogy to South Africa's interest in the

10

lobsters seized by the defendants and guides our analysis here. In *Cleveland*, the Supreme Court concluded that, because its interest was "purely regulatory," the State of Louisiana did not have a "property" right in an unissued license to a video poker operator, despite the pre-issuance processing fees collected by the state. 531 U.S. at 20-21. As Justice Ginsburg explained, "The State receives the lion's share of its expected revenue not while the licenses remain in its own hands, but only after they have been issued to licensees. Licenses pre-issuance do not generate an ongoing stream of revenue." *Id.* Importantly, the Supreme Court noted that "as to the character of Louisiana's stake in its video poker licenses," the licensee in *Cleveland* did not "defraud the state of any money to which the State was entitled by law." *Id.* at 22.

By contrast, in *Pasquantino*, the Supreme Court held that Canada did possess a "property" right to uncollected excise taxes on liquor that was illegally imported into the country. The uncollected tax, Justice Thomas reasoned, was a right to "collect money" which is a "valuable entitlement" considered to be "'property' as that term ordinarily is employed." *Pasquantino*, 544 U.S. at 355-56 (*citing* Black's Law Dictionary 1382 (4th ed. 1951) (defining defining "property" as "extend[ing] to every species of valuable right and interest") (citations ommitted); *see also Pasquantino*, 544 U.S. at 356 ("The right to be paid money has long been thought to be a species of property.") (citing 3 W. Blackstone, Commentaries on the Laws of England 153-155 (1768)). The Court had no doubt that the right to collect that revenue was "'something of value' to the Government of Canada." *Id.* at 355 (quoting *McNally v. United States*, 483 U.S. 350, 358 (1987)).

As a result, the *Pasquantino* Court clearly distinguished its earlier holding in *Cleveland*. In *Cleveland*, the "State's interest in an unissued video poker license was not 'property,' because the interest in choosing particular licensees was 'purely regulatory' and '[could not] be economic,'" *id.*

11

at 357 (quoting *Cleveland*, 531 U.S. at 22-23). Indeed, "the Government nowhere allege[d] that [the defendant] defrauded the State of any money to which the State was entitled by law." *Id.* In *Pasquantino*, on the other hand, "Canada's entitlement to tax revenue is a straightforward 'economic' interest . . . the Government alleged and proved that petitioners' scheme aimed at depriving Canada of money to which it was entitled by law." *Id.*

Like the defendants in *Pasquantino*, Arnold Bengis, Jeffrey Noll, and David Bengis' conspiracy to conceal their illegal trade in lobster deprived South Africa of money it was due. Had the defendants not undertaken efforts to conceal their overharvesting, including off-loading overharvested lobsters at night and under-reporting the amounts of their catch to South African authorities, those lobsters caught in excess of the legal limits would have been seized and sold by the government. As a consequence, the defendants' conduct deprived South Africa of proceeds from the sale of the illegally harvested lobsters, i.e., "money to which it was entitled by law." *Id.* Just as in *Pasquantino*, "had [defendants] complied with [their] legal obligation, they would have paid money to [South Africa]." Like Canada's entitlement to its uncollected excise tax revenue in *Pasquantino*, South Africa's entitlement to the revenue from the lobsters that were taken illegally does constitute "property." The defendants' conduct in depriving South Africa of that revenue is, therefore, an offense against property.[3]

B. South Africa as a "victim" under the MVRA and VWPA

---

[3] We also reject the R&R's reliance on the district court cases suggesting that "offenses against property" are limited to offenses against "tangible property," including money. Our precedents dictate that the definition of property is broader than those cases suggest. *See United States v. Milstein*, 481 F.3d 132, 137 (2d Cir. 2007) (recognizing intangible property).

12

Both the MVRA and VWPA contemplate that a court must or may order the defendant to pay restitution to a "victim." 18 U.S.C. § 3663A(a)(1); § 3663(a)(1)(A). Both statutes define a "victim" as:

> a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered including, in the case of an offense that involves as an element a scheme, conspiracy, or pattern of criminal activity, any person directly harmed by the defendant's criminal conduct in the course of the scheme, conspiracy, or pattern.

*Id.* § 3663A(a)(2); § 3663(a)(2). In its second order adopting the magistrate judge's report, the district court denied restitution under the VWPA on the ground that South Africa was not a "victim" entitled to restitution because it had failed to show that it had suffered any losses directly caused by the defendants' illegal scheme. We disagree.

Relying on the magistrate judge's report and district court's order, the defendants contend that, even if South Africa had a property right in the lobsters, it is not a victim of the conspiracy because the conspiracy to which the defendants pleaded guilty did not involve the illegal harvesting of the lobsters, only their importation to the United States with the knowledge that the lobsters had been obtained in violation of South African law. We are not persuaded. The defendants need not have personally harvested the lobsters in order to have deprived the South African government of its property right in the lobsters. By smuggling the lobsters out of South Africa knowing that they had been harvested unlawfully, defendants deprived the South African government of its right to seize and sell the poached lobsters. The defendants' conduct facilitated the illegal harvesting of the lobsters by providing access to the United States market and enabled the poaching to go undetected by the South African government by, for example, off-loading the overharvested lobster at night, under-reporting catch amounts to South African authorities, bribing officials, and submitting false

13

export documents. In doing so, the defendants' criminal conduct "directly harmed" the South African government, which in turn makes South Africa eligible for restitution under the VWPA and MVRA. *See* 18 U.S.C. § 3663A(a)(2); § 3663(a)(2).

Because South Africa had a property interest in the illegally harvested lobsters and is a victim for purposes of restitution, we hold that the MVRA governs the restitution award at issue here.

C.      Calculating a Restitution Award

We further conclude that the facts on the record do not support the district court's finding that the complexity of fashioning an award of restitution would further complicate and prolong the sentence so that the burden on the sentencing process outweighs any need to provide restitution to which South Africa is entitled. *See* 18 U.S.C. § 3663A(c)(3). Given our analysis of the nature of South Africa's property interest and our review of the record, OLRAC Method II seems to us a sufficient loss calculation methodology under the circumstances presented by this case. This method most directly traces the nature of the loss inflicted on South Africa because, had the poaching been detected, South Africa would have been entitled to seize the illegally harvested lobsters at that time and sell them at market price for its own benefit. Restitution would thus be calculated by multiplying the number of poached lobsters by the corresponding market price (based on the prevailing market rates at the time the lobsters were poached). Every overharvested lobster that South Africa did not seize and sell represents a loss that has not been recovered.

We note, furthermore, that there is no problem in imposing both a restitution award and a forfeiture award in this case. *See United States v. Kalish*, 626 F.3d 165, 169-70 (2d Cir. 2010) (noting that "simultaneous imposition" of both a forfeiture remedy and a restitution remedy, authorized by separate statutes, "offends no constitutional provision"). We leave to the district

14

court's determination in the first instance all relevant issues relating to the amount of restitution, whether any off-set should apply, and if so, whether there should be one based on the forfeiture. We note in passing, however, that to the extent that a restitution award for South Africa that is derived from the market value of the illegally harvested lobsters might be duplicative of the sums that defendants have already forfeited to the United States, the government may exercise its discretion to transfer the forfeited funds to South Africa, in order to reduce the restitution award by the amount defendants have already forfeited. *See* Gov't Br. 56 n.* ("Under the Department of Justice's Restoration Policy, once the District Court orders restitution, the Government would have the discretion to forward those monies to South Africa in partial satisfaction of the defendants' restitution obligations."). We express no view as to how such issues should be resolved.

## IV.    Conclusion

For the foregoing reasons, the judgments of the district court are VACATED, and the case is REMANDED to the district court with instructions to calculate restitution and enter an order of restitution in favor of the Republic of South Africa.