08-3750-cr
**USA v. Battista**

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2008

(Argued: May 13, 2009        Decided: August 6, 2009)

Docket No. 08-3750-cr

_____

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

JAMES BATTISTA, ALSO KNOWN AS BABA, ALSO KNOWN AS SHEEP,

*Defendant-Appellant.*

_____

Before:
WALKER, WESLEY, WALLACE,[*] *Circuit Judges.*

Defendant-Appellant James Battista appeals from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*), entered on July 24, 2008, convicting him, after a guilty plea, of conspiracy to transmit wagering information in violation of 18 U.S.C. §§ 371, 1084. We hold that the district court acted within its discretion in ordering Battista to pay restitution to the

_____

[*] The Honorable J. Clifford Wallace, United States Court of Appeals for the Ninth Circuit, sitting by designation.

1

National Basketball Association under the Victim and Witness Protection Act of 1982, 18 U.S.C. § 3663.

JACK MCMAHON, Philadelphia, PA, *for Appellant*.

JEFFREY GOLDBERG, Assistant United States Attorney (Jo Ann M. Navickas and Alexander A. Solomon, *on the brief*), *for* Benton J. Campbell, United States Attorney for the Eastern District of New York, Brooklyn, NY*, for Appellee.*

WESLEY, *Circuit Judge*:

Defendant-Appellant James Battista appeals from a judgment of the United States District Court for the Eastern District of New York (Amon, *J.*), entered on July 24, 2008, convicting him, after a guilty plea, of conspiracy to transmit wagering information in violation of 18 U.S.C. §§ 371, 1084. Battista was a co-conspirator, along with Thomas Martino, in the much-publicized National Basketball Association ("NBA") gambling scandal involving former referee Timothy Donaghy. Following guilty pleas by all three defendants, the NBA, and the United States on its behalf, sought restitution. The district court determined that each defendant was required to pay restitution to the NBA as a victim of their criminal offenses. Only Battista

challenges the imposition of restitution on appeal.  For the reasons that follow, we affirm the restitution order of the district court.

**FACTS**

Donaghy began his career as an NBA referee in September 1994 and continued in that position for thirteen seasons. He first began placing bets on NBA games, including games he officiated, during the 2003-04 season through his friend Jack Concannon.  The conspiracy at issue here, however, began in December 2006 and continued until April 2007. Donaghy provided "picks" on NBA games, again including games he officiated, to co-conspirators Battista and Martino. Battista agreed to pay Donaghy a fee for each game in which Donaghy correctly picked the winner.  Donaghy provided the picks to Martino, Martino relayed the information to Battista, and Battista placed the bets.  According to the government, Donaghy and Martino devised a code for communicating picks over the telephone using the names of Martino's two brothers.  If Donaghy mentioned Martino's older brother, the pick would be the home team; if Donaghy referred to Martino's younger brother, the pick would be the visiting team.  In making his picks, Donaghy relied on,

3

among other things, nonpublic information to which he had unique access by virtue of his position as an NBA referee. This information included his knowledge of the officiating crews for upcoming NBA games, the interactions between certain referees, players and team personnel, and the physical condition of players. During the course of the conspiracy, Martino met with Donaghy in several cities for the primary purpose of paying Donaghy for his correct predictions.

After the government discovered the gambling scheme, Donaghy agreed to cooperate with its investigation. Thereafter, in August 2007, Donaghy pleaded guilty to conspiracy to commit wire fraud in violation of 18 U.S.C. § 1343 and conspiracy to transmit wagering information in violation of 18 U.S.C. § 1084. In February 2008, Battista and Martino were both charged with conspiracy to commit wire fraud and conspiracy to transmit wagering information.[1] As pertinent here, the indictment alleged that Martino and Battista committed the following overt acts in furtherance of the conspiracy to transmit wagering information:

    a. On or about December 13, 2006, MARTINO spoke
    with the NBA referee [Donaghy] by telephone

_____

[1] Martino was also charged with two counts of perjury.

4

regarding the NBA referee's pick for an NBA game.

b. On or about December 14, 2006, BATTISTA and MARTINO met with the NBA referee in Pennsylvania and gave a cash payment to the NBA referee.

c. On or about December 26, 2006, MARTINO spoke with the NBA referee by telephone regarding the NBA referee's pick for an NBA game.

d. On or about March 11, 2007, MARTINO met with the NBA referee in Toronto, Canada, and MARTINO gave a cash payment to the NBA referee.

(Indictment, ¶ 15). A few months later, Martino pleaded guilty to the wire fraud conspiracy charge and Battista pleaded guilty to the wagering conspiracy charge. Battista described his criminal conduct during his plea allocution:

[F]rom December of 2006 to March 2007, I was engaged in the business of sports betting, and I agreed with Tom Martino and Tim Dona[ghy] to use the telephone across state lines to obtain information to assist me in wagering on sporting events, on NBA basketball games. I received information from Tom Martino, who received his information from the NBA referee Tim Dona[ghy]. This agreement was formed during a meeting between the three of us, in a hotel in December of 2006. During the course of this agreement from time to time I directed Mr. Martino to do certain things such as having meetings with Mr. Dona[ghy].

Battista further admitted that he had met with Donaghy in Pennsylvania for payment.

The NBA, and the United States on its behalf, sought restitution against all three defendants. The NBA requested

5

restitution for (1) Donaghy's compensation for the portions of the 2003-04, 2004-05, 2005-06, and 2006-07 seasons when he officiated games in which he had a financial interest; (2) that portion of the salaries of NBA employees attributed to reviewing the tapes of the games Donaghy refereed; and (3) attorneys' fees incurred by the NBA in connection with assisting the government in its investigation and prosecution.

After a comprehensive and particularized discussion of each restitution claim asserted by the NBA, the district court ordered the defendants to pay restitution in the total amount of $217,266.94, breaking down the portions owed by (1) all the defendants jointly and severally, (2) Battista and Martino jointly and severally, and (3) each defendant individually. *See United States v. Donaghy*, 570 F. Supp. 2d 411, 436-37 (E.D.N.Y. 2008). As relevant to the issues Battista raises on appeal, the district court concluded that the NBA was a "victim" of Battista's crime of conviction – conspiracy to transmit wagering information – under either the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A, or the Victim and Witness Protection Act of 1982 ("VWPA"), 18 U.S.C. § 3663. The court determined that

6

Battista's crime was covered by the MVRA, which applies to "offense[s] committed by fraud or deceit," 18 U.S.C. § 3663A(c)(1)(A)(ii), concluding that "the phrase 'committed by fraud or deceit' appears to refer to the way in which a particular offense was carried out rather than its elements." 570 F. Supp. 2d at 421. In the alternative, the court concluded that Battista was accountable for restitution under the VWPA and rejected the argument that his current unemployment and familial obligations foreclosed VWPA restitution. *Id.* at 421-23.

Battista appeals the district court's restitution order, arguing that: (1) the NBA was not a "victim" of the offense to which he pleaded guilty under either the MVRA or the VWPA; (2) his crime of conviction is not covered under either restitution statute; (3) attorneys' fees and investigative costs incurred by the NBA are not recoverable; and (4) his financial obligations were sufficiently burdensome to exempt him from paying restitution under the VWPA. For the following reasons, we reject Battista's contentions and affirm the district court order.

**DISCUSSION**[2]

The goal of restitution, in the criminal context, is "to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir. 2006). In the context of the MVRA, we have observed that "the statutory focus" is "on the victim's loss and upon making victims whole." *United States v. Coriaty*, 300 F.3d 244, 253 (2d Cir. 2002). The procedures a sentencing court must follow in determining whether, and to what extent, to order restitution pursuant to the MVRA or the VWPA are set forth in 18 U.S.C. §§ 3663(d), 3663A(d), 3664. *See United States v. Reifler*, 446 F.3d 65, 113 (2d Cir. 2006).

## I.   MVRA or VWPA?

Under the MVRA, restitution is mandatory for certain crimes, such as "an offense against property under this title . . . including any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). A district court

---

[2] We review a district court's order of restitution for abuse of discretion. *United States v. Ojeikere*, 545 F.3d 220, 222 (2d Cir. 2008). Our standard of review is *de novo* for the district court's legal conclusions, whereas we review findings of fact for clear error. *United States v. Amato*, 540 F.3d 153, 158 (2d Cir. 2008).

8

must order restitution where "an identifiable victim or victims has suffered a . . . pecuniary loss." *Id.* § 3663A(c)(1)(B). In contrast to the MVRA, however, restitution under the VWPA is discretionary. The VWPA provides that "[t]he court, when sentencing a defendant convicted of [any] offense under this title . . ., *may order* . . . that the defendant make restitution to any victim of such offense." 18 U.S.C. § 3663(a)(1)(A) (emphasis added). The VWPA requires sentencing courts to consider the amount of the loss sustained by the victim as a result of the offense, the defendant's financial resources, the financial needs and earning ability of the defendant and the defendant's dependents, and other factors the court deems appropriate. *See id.* § 3663(a)(1)(B)(i)(I-II); *United States v. Ben Zvi*, 242 F.3d 89, 99 (2d Cir. 2001). While the district court must review these statutory factors, detailed factual findings for each factor are not required. *See United States v. Stevens*, 211 F.3d 1, 6 (2d Cir. 2000). Aside from the aforementioned differences, "the provisions of the VWPA and the MVRA are nearly identical in authorizing an award of restitution." *United States v. Serawop*, 505 F.3d 1112, 1118 (10th Cir. 2007) (internal quotation marks

9

and alteration omitted).

In this case, the district court determined that Battista's offense of conviction – conspiracy to transmit wagering information – was covered under the MVRA, reasoning that "the phrase 'committed by fraud or deceit' appears to refer to the way in which a particular offense was carried out rather than its elements." 570 F. Supp. 2d at 421. Although Battista's criminal offense (unlike the other co-conspirators' offenses of conviction, i.e., wire fraud) does not contain "fraud or deceit" as one of its elements, the government argues that the crime nevertheless falls within the scope of the MVRA because it was executed in a fraudulent manner. Specifically, the government contends that the conduct underlying the wagering conviction was Battista's dealings with Donaghy and Martino as part of a scheme to defraud the NBA of Donaghy's honest services by using NBA insider information to place wagers on NBA games. The district court generally agreed, observing that "the success of Battista's wagering was dependent on Donaghy's fraudulent conduct." *Id.* In support of its position, the government points to statements made by Battista during his plea allocution and the factual allegations set forth in the

10

indictment, asserting that they demonstrate that Battista's transmittal of wagering information was intertwined with the fraudulent gambling scheme. Battista's co-conspirators, Donaghy and Martino, never disputed before the district court the applicability of the MVRA to the offense for which they pleaded guilty – conspiracy to commit wire fraud – because that offense must, by definition, be committed by fraud or deceit.

We need not decide whether the district court properly ordered Battista to pay restitution under the MVRA – which would require us to answer the open question of whether the language "committed by fraud or deceit" in Section 3663A(c)(1)(A)(ii) refers to the elements of an offense or the manner in which the defendant commits the offense – because we hold that restitution was properly imposed pursuant to the VWPA.[3] *Cf. United States v. Murillo-Bejerano (In re Rendon Galvis)*, 564 F.3d 170, 175 (2d Cir. 2009) (declining to decide whether the term "crime victim" under the Crime Victims' Rights Act, 18 U.S.C. §

---

[3] The MVRA and VWPA do not overlap. Rather, the MVRA makes restitution mandatory for the crimes it covers, and the VWPA enables discretionary restitution for non-MVRA crimes. *See* 18 U.S.C. § 3663(a)(1)(A) (excluding from the VWPA "offense[s] described in section 3663A(c)").

11

3771, should be defined according to the elements of the crime or offense of conviction). Before turning to the district court's analysis of the statutory factors set forth in the VWPA, however, we must first determine whether the NBA is a "victim" of Battista's offense of conviction under the VWPA.

**II.  Is the NBA a "Victim"?**

The VWPA defines "victim" as

> a person directly and proximately harmed as a
> result of the commission of an offense for which
> restitution may be ordered including, in the case
> of an offense that involves as an element a
> scheme, conspiracy, or pattern of criminal
> activity, any person directly harmed by the
> defendant's criminal conduct in the course of the
> scheme, conspiracy, or pattern.

18 U.S.C. § 3663(a)(2); *accord id.* § 3663A(a)(2).[4]  Although the definition of victim is certainly broad, in determining whether one qualifies as a victim, a sentencing court can only consider the offense or offenses for which the defendant was convicted. *See Hughey v. United States*, 495 U.S. 411, 413 (1990); *United States v. Metal Lathers Local*

---

[4] The Crime Victims' Rights Act, 18 U.S.C. § 3771, contains a similar definition.  That statute defines the term "crime victim" as "a person directly and proximately harmed as a result of the commission of a Federal offense or an offense in the District of Columbia."  18 U.S.C. § 3771(e).

12

*46 Pension Fund (In re Local # 46 Metallic Lathers Union)*, 568 F.3d 81, 86 (2d Cir. 2009). Thus, restitution may be ordered "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey*, 495 U.S. at 413. "[T]he loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order." *Id.* at 420.

On the facts presented in this case, we conclude that the NBA was "directly and proximately harmed" by Battista committing the crime of conspiracy to transmit wagering information. 18 U.S.C. § 3663(a)(2). As the district court explained, "[o]ne of the key features of this conspiracy was that Donaghy was able to gain a wagering advantage for Battista by using confidential information belonging to the NBA in the course of providing him with 'picks' on games he refereed." 570 F. Supp. 2d at 420. Although Battista did not defraud the NBA directly, we conclude that the district court properly characterized the NBA as a "victim" under the VWPA because the NBA was harmed by the conduct committed during the course of the conspiracy to transmit wagering information, e.g., Battista's use of nonpublic information solely belonging to the NBA (conveyed to him by the co-

conspirators) to place illegal wagers on its games. Moreover, we must look at Battista's "offense" of conspiracy, in which his criminal conduct encompasses not just his own acts but also those of his co-conspirators. *See United States v. Boyd*, 222 F.3d 47, 50-51 (2d Cir. 2000) (per curiam). By this standard, Battista's crime plainly harmed the NBA.

### III.     The District Court's VWPA Analysis

We find no error in the district court's analysis of the statutory factors set forth in the VWPA. Nor did the district court abuse its discretion in rejecting Battista's argument that VWPA restitution was improper because he is financially unable to make payments due to his current unemployment and that he has five minor children. We have previously indicated that "[a] defendant's limited financial resources at the time restitution is imposed is not dispositive of whether restitution is proper, particularly where the defendant has a reasonable potential for future earnings." *Ben Zvi*, 242 F.3d at 100 (citation omitted); *see also United States v. Mortimer*, 52 F.3d 429, 436 (2d Cir. 1995) ("Even an indigent defendant may be subject to the duty to pay restitution when and if funds are eventually

14

acquired.").

Here, the district court found that Battista possessed assets totaling $676,300. 570 F. Supp. 2d at 422. The court further noted that Battista's sole liability was the $120,000 balance on his mortgage. *Id.* The court found the following additional facts about Battista's financial status:

> His household's monthly income is $1,800, which is the sum of his wife's salary and assistance from other family. His household's monthly expenses total $4,830, resulting in a monthly negative cash flow of $3,030. Currently, Battista stays home with his three children while his wife works. His wife has indicated that Battista has expressed interest in opening a catering business, and his presentence report reflects that he has previous experience in the restaurant business.

*Id.* Battista does not challenge any of these factual findings on appeal, nor have we identified any basis for questioning them. In our view, the district court acted well within its discretion in determining that Battista has a "reasonable potential for future income" and that he "should have sufficient resources to contribute to the payment of restitution to the NBA." *Id.*

We further note that, in addition to the enumerated factors identified in Section 3663(a)(1)(B)(i), sentencing courts may also consider "such other factors as the court

15

deems appropriate." 18 U.S.C. § 3663(a)(1)(B)(i)(II). The district court took note of its desire to accord equal treatment to similarly situated defendants. *See* 570 F. Supp. 2d at 422-23. Under the circumstances presented in this case, two co-conspirators pled guilty to a crime clearly subject to mandatory restitution, and another co-conspirator (Battista), equally blameworthy in the eyes of the district court, pled guilty to a crime involving the same underlying criminal conduct that is not as obviously subject to mandatory restitution but plainly subject to discretionary restitution in the alternative. In our view, it was entirely proper for the district court – which concluded that the VWPA applied to Battista in the alternative – to recognize equal treatment as a factor supporting the imposition of restitution under that statute.

## IV. Attorneys' Fees

Lastly, Battista argues that attorneys' fees incurred by the NBA are not recoverable under either restitution statute.[5] Along with permitting restitution for, among

---

[5] Battista does not specifically challenge the other categories of restitution that the district court applied to him: (1) the amount of compensation paid to Donaghy for the games he refereed during the 2006-07 season in which he provided picks to Battista and Martino ($67,343.92), *see* 570

16

other things, property loss and healthcare expenses, the VWPA allows a victim to recover "lost income and necessary child care, transportation, and *other expenses* related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663(b)(4) (emphasis added); *accord* 18 U.S.C. § 3663A(b)(4).

We recently addressed the scope of the term "other expenses" under the MVRA, 18 U.S.C. § 3663A(b)(4), in *United States v. Amato*, 540 F.3d 153, 159-63 (2d Cir. 2008), where we affirmed a restitution order in the amount of $12.8 million to the corporate victim of mail and wire fraud. In *Amato*, we held that "'other expenses' incurred during the victim's participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense may include attorney fees and accounting costs." *Id.* at 159. We rejected the defendants' contention that the term "other expenses" excluded attorneys' fees and

---

F. Supp. 2d at 424-30 (apportioned jointly and severally across all defendants); and (2) the amount representing the time NBA employees spent reviewing tapes of games that Donaghy refereed at the government's request ($9,930.02), also apportioned jointly and severally among all three defendants, *see* 570 F. Supp. 2d at 436-37.

17

accounting costs as a matter of law, noting that "[o]ur conclusion follows from the plain language of the statute." *Id.* at 160.  We observed that the language in Section 3663A(b)(4) of the MVRA "gives the district courts broad authority to determine which of the victim's expenses may be appropriately included in a restitution order."  *Id.*  We further elaborated on the statutory requirements, stating that:

> The statute requires that the included expenses be "necessary," and that they be "incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense."  18 U.S.C. § 3663A(b)(4). It also requires . . . that these expenses be incurred by a "victim" within the meaning of 18 U.S.C. § 3663A(a)(2) and that they not require unduly complicated determinations of fact, *see* 18 U.S.C. § 3663A(c)(3).  The statute does not otherwise limit the type of expenses that may be included.

*Id.*[6]

---

[6] Among other arguments raised by the *Amato* defendants that we rejected was one asserting that attorneys' fees and accounting costs could not be considered "other expenses" because they were merely indirect or consequential damages. *Id.* at 162.  We declined to follow several decisions from our sister circuits holding that attorneys' fees could not be included in restitution orders.  *See United States v. Radziszewski*, 474 F.3d 480, 487 n.3 (7th Cir. 2007); *Gov't of Virgin Islands v. Davis*, 43 F.3d 41, 46 (3d Cir. 1994); *United States v. Mullins*, 971 F.2d 1138, 1146-47 (4th Cir. 1992); *United States v. Arvanitis*, 902 F.2d 489, 497 (7th Cir. 1990).  The latter three cases were decided under 18

18

We conclude that the holding in *Amato* – concededly decided in the MVRA context – applies to the almost verbatim statutory language in the VWPA.[7] Accordingly, the district court did not err in awarding the NBA attorneys' fees incurred as a result of the assistance it provided to the government in its investigation and prosecution of Battista's criminal offense. The rationale that we provided in support of our conclusion that attorneys' fees were recoverable as "other expenses" under the MVRA applies with equal force to the VWPA. *See Amato*, 540 F.3d at 159-162. Moreover, when "two sections share the same purpose, the parallel provisions can, as a matter of general statutory construction, be interpreted to be *in pari materia*." *United*

---

U.S.C. § 3663(b)(1), prior to the enactment of the provision at issue in this case, 18 U.S.C. § 3663(b)(4). *See Amato*, 540 F.3d at 161; *see also id.* at 159 (noting that Congress added 18 U.S.C. § 3663(b)(4) in 1994). Moreover, to the extent that the Seventh Circuit in *Radziszewski* reached a contrary result while interpreting the parallel subsection under the MVRA, 18 U.S.C. § 3663A(b)(4), we expressly declined to follow that holding. *See id* at 161.

[7] Instead of using the phrase "other expenses *related to* participation," 18 U.S.C. § 3663(b)(4) (emphasis added), the MVRA states "other expenses *incurred during* participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4) (emphasis added). In all other respects, the statutory provisions are identical.

*States v. Carr*, 880 F.2d 1550, 1553 (2d Cir. 1989). Indeed, we have often interpreted the MVRA and VWPA in concert. *See, e.g., United States v. Ekanem*, 383 F.3d 40, 43-44 (2d Cir. 2004).

Here, the NBA incurred substantial attorneys' fees as a direct result of Battista's criminal acts. The district court meticulously parsed out the fees and costs submitted by the NBA in determining which expenses were associated with each defendant and whether they were incurred while assisting the government in ascertaining the extent of the criminal conspiracy and in preparing for Battista's criminal proceedings. Notably, the district court rejected restitution for attorneys' fees not directly related to the assistance the NBA provided to the government in its investigation and prosecution of the criminal offenses committed by the defendants. The court agreed with the defendants that attorneys' fees associated with counseling the NBA on its public response to Donaghy's guilty plea were not recoverable as an "investigation cost" pursuant to 18 U.S.C. §§ 3663(b)(4), 3663A(b)(4). *See* 570 F. Supp. 2d at 432. Indeed, this gambling scandal undoubtedly damaged the reputation of the NBA and had the potential to impugn the

20

integrity of other referees in the league.[8]  Moreover, the conspiracy has called into question the legitimacy of the outcomes of the many games Donaghy refereed.  Nevertheless, in contrast to the attorneys' fees discussed above and authorized by the district court, such damages, while certainly significant, were not associated with assisting the government in the investigation and prosecution of the defendants' criminal offenses, and thus, are not compensable under 18 U.S.C. § 3663(b)(4).

**CONCLUSION**

Accordingly, for the reasons set forth above, the judgment of the district court is hereby AFFIRMED.

---

[8] Donaghy's attorney alleged widespread game manipulation and criminal activity amongst NBA referees. *See* Howard Beck, *Donaghy Cites Broad Misconduct in N.B.A.*, N.Y. Times, June 11, 2008, available at http://www.nytimes.com/2008/06/11/sports/basketball/11refs.html.  In addition, a referee friend of Donaghy was accused of wrongdoing in the media.  *See* Howard Beck, *N.B.A. Referee Speaks as Gambling Cloud Passes*, N.Y. Times, Nov. 4, 2008, at B14, available at http://www.nytimes.com/2008/11/05/sports/basketball/05referee.html.