**UNITED STATES of America,**

v.

**Luis ADORNO, Defendant.**

**No. 12–CR–611 (NG).**

United States District Court, E.D. New York.

May 24, 2013.

---

Cristina Marie Posa, United States Attorney's Office, Brooklyn, NY, for United States of America.

## ORDER

GERSHON, District Judge.

Defendant Luis Adorno, a former Supervisory Construction Project Manager at the City of New York Housing and Preservation Department ("HPD"), has pled guilty to a single-count Information charging bribery concerning a program receiving Federal funds, in violation of 18 U.S.C. § 666(a)(1)(B) (the "Information"). The City of New York (the "City") seeks an award of restitution under the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A (the "MVRA"). Specifically, the City seeks payment of restitution in the amount of 25% of Adorno's salary for 2008 and 2009, the years in which the offense was committed.[1] Both the Probation Department and Adorno argue that the MVRA is inapplicable, on the ground that the bribery charged is not an offense against property, nor one committed by fraud or deceit.

■ Under the MVRA, a defendant who is convicted of certain types of offenses must "make restitution to the victim of the offense." 18 U.S.C. § 3663A(a)(1). The purpose of the MVRA is "essentially compensatory: to restore a victim, to the extent money can do so, to the position he occupied before sustaining injury." *United States v. Boccagna*, 450 F.3d 107, 115 (2d Cir.2006). The district court's "statutory authority to award restitution under the MVRA is limited to awards to victims of the offense of conviction." *United States v. Archer*, 671 F.3d 149, 170 (2d Cir.2011).

1. The City also seeks repayment of the $100,000 bribe that Adorno admitted to soliciting and accepting from a contractor in exchange for providing future assistance with respect to participation in certain HPD projects. These funds have been forfeited subject to the Order of October 2, 2012. The government concedes that it has no evidence tending to show that Adorno inflated contract prices by the amount of the bribe, and thus the City's contention that it suffered a pecuniary loss in this amount cannot be sustained. In the absence of a pecuniary loss, restitution is not appropriate. *See* 18 U.S.C. § 3663A(c)(1)(B).

The term "victim" refers to the "person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered." 18 U.S.C. § 3663A(a)(2). The MVRA sets forth a limited number of offenses for which restitution must be ordered. Such offenses include "an offense against property under this title ... including any offense committed by fraud or deceit; ... and in which an identifiable victim has suffered an injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1)(A)-(B).

■ Application of the MVRA is "accordingly limited to the *actual, provable loss suffered by the victim and caused by the offense conduct.* Awarding restitution in excess of the victim's actual loss would be punitive in nature and thus fall outside the scope of the MVRA." *U.S. v. Fair,* 699 F.3d 508, 512 (D.C.Cir.2012) (emphasis added).

In order to ascertain whether restitution should be awarded under the MVRA in the present case, it is necessary to determine, first, whether bribery amounts to an offense against property (including one committed by fraud or deceit), and further, whether the City has suffered an identifiable loss caused by Adorno's conduct—i.e., whether the City is a victim as contemplated by the statute.

■ Turning, first, to the question of whether bribery constitutes an offense against property within the MVRA, the government and the City argue that Adorno's salary constitutes the "property" of the City, as his employer, and that the City lost some of this property as a result of Adorno's conduct, to wit: By accepting a bribe in exchange for assisting a con-struction contractor in obtaining additional work from HPD, Adorno failed to provide honest and faithful services to his employer.[2] The City further asserts that such deprivation of Adorno's honest services amounts to a pecuniary loss caused by Adorno and suffered by the City, rendering it a victim under the MVRA, and entitling it to restitution of 25% of Adorno's salary for the two years during which the offense was committed.

The arguments advanced by the City and the government depend upon an assumption that the bribery was committed in such a way as to deprive the City of Adorno's honest services. However, as the Probation Department recognizes, while the extent to which Adorno committed honest services fraud is potentially relevant conduct under the United States Sentencing Guidelines, this is not the offense to which Adorno has pled, and it thus appears that the government and the City may be "seeking restitution for losses caused by an unprosecuted offense rather than the offense of conviction, something [they] may not do." *Archer,* 671 F.3d at 170 (2d Cir.2011).

Both the City and the government rely primarily on *United States v. Bahel,* 662 F.3d 610 (2d Cir.2011), to support their contention that bribery requires restitution under the MVRA. In *Bahel,* an employee of the United Nations was convicted of honest services fraud under 18 U.S.C. §§ 1341, 1343 and 1346, and bribery under 18 U.S.C. § 666(a)(1)(B). The United States Court of Appeals for the Second Circuit affirmed the district court's award of restitution for the amount of Babel's salary, concluding that the salary "was plainly 'property' that belonged to the

---

**2.** The government also makes the argument that bribery is inherently a crime committed "by deceit," since Adorno "kept the bribe payments secret from his employer." (Government Letter, February 26, 2013, at 4.) If this were sufficient to bring an offense within the MVRA, then many more offenses than those delineated in 18 U.S.C. § 3663A(c)(1) would give rise to restitution, and this result clearly is not what the statute intends.

U.N., at least some of which the U.N. lost since the U.N. paid [Bahel] for his honest services, which is what he failed to provide." *Bahel,* 662 F.3d at 649. Both the government and the City point to the presence of the bribery count, arguing that the *Bahel* court does not distinguish between whether the restitution award was based on the conviction for bribery or honest services fraud and that the case thus supports the proposition that bribery, under 18 U.S.C. § 666(a)(1)(B), is within the MVRA. I do not so read *Bahel.* In discussing both the propriety and the amount of the restitution award, the *Bahel* court repeatedly makes reference to the lost value of the defendant's "honest services," stating, for example, "a portion of an individual's salary can be subject to forfeiture where, as here, an employer pays for honest services but receives something less;" and, "the evidence at Bahel's trial established only that he engaged in a significant

pattern of honest services fraud …". *Bahel,* 662 F.3d at 649. *Bahel,* therefore, supports only the conclusion that honest services fraud constitutes an offense against property, giving rise to an award of restitution under the MVRA.

Where the offense of conviction is limited, as it is here, to bribery, it is not clear that the MVRA applies. In *United States v. Battista,* 575 F.3d 226 (2d Cir.2009), the Second Circuit declined "to answer the open question of whether the language 'committed by fraud or deceit' in Section 3663 A(c)(1)(A)(ii) refers to the *elements* of an offense or the *manner* in which the defendant *commits* the offense." [3] 575 F.3d at 230–31 (emphasis added). Clearly, the elements of the offense of bribery concerning programs receiving Federal funds, under 18 U.S.C. § 666(a)(1)(B), do not make it an offense against property, including one committed by fraud or deceit.[4] And, while the existence of a bribery or

**3.** In *Battista,* the Second Circuit affirmed an award of restitution against defendant Battista, who had pled guilty to charges relating to his participation in a gambling scheme involving the National Basketball Association ("NBA"). The defendants, Battista, Martino, and former NBA referee, Donaghy, engaged in a scheme whereby Donaghy would provide "picks" on certain NBA games to Martino, who, in turn, gave the information to Battista, who then placed corresponding bets. *Battista,* 575 F.3d at 228. Donaghy subsequently pled guilty to conspiracy to commit wire fraud and conspiracy to transmit wagering information; Martino pled guilty to the wire fraud conspiracy charge; and Battista pled to the charge of conspiracy to transmit wagering information. *Id.* The district court awarded restitution against all three defendants, which included the amount of Donaghy's salary for the three years in which the wagering conspiracy took place. *See id.* at 229; *see also United States v. Donaghy,* 570 F.Supp.2d 411, 429 (E.D.N.Y.2008).

Over Battista's opposition (the other defendants did not dispute the applicability of the MVRA to their offenses of conviction), the district court concluded that the NBA was a

victim of the offense to which Battista pled and that such offense was covered by the MVRA; alternatively, the court concluded, restitution was appropriate under the Victim and Witness Protection Act of 1982 (the "VWPA"), 18 U.S.C. § 3663(a)(1)(A). *Donaghy,* 570 F.Supp.2d at 420–23.

In reaching this conclusion, the district court held that the phrase, "committed by fraud or deceit," as it appears in the MVRA, refers not to the elements of an offense, but rather, to "the manner in which the defendant commits the offense." *Id.* at 421. Since the manner in which Battista's wagering conspiracy was carried out depended upon Donaghy's fraud, the district court found that Battista was subject to the MVRA. *Id.* Upon appeal by Battista, the Second Circuit affirmed the award, but declined to answer the "open question," as set forth above, since it concluded that restitution was properly awarded under the VWPA. *See Battista,* 575 F.3d at 230–31.

**4.** The statute provides that any agent of an organization receiving benefits in excess of $10,000 in a one-year period under a Federal program, who corruptly accepts or agrees to accept, "anything of value from any person,

kickback scheme is a prerequisite to making out a charge of honest services fraud under 18 U.S.C. § 1346, there is no reciprocal prerequisite inherent in § 666. *See Skilling v. United States,* 561 U.S. 358, 130 S.Ct. 2896, 2931, 177 L.Ed.2d 619 (2010) (holding that § 1346 criminalizes the use of the wires to deprive another individual of one's honest services only where there is a bribery or kickback scheme); *see also United States v. Bruno,* 661 F.3d 733, 740 (2d Cir.2011) (post-*Skilling,* dismissing, without prejudice, an indictment charging honest services fraud under § 1346 for failure to explicitly charge a bribery or kickback theory). That is, honest services fraud is not essential to a charge of bribery.

Even if the Second Circuit were to answer the question left open in *Battista* and permit the court to look at the manner in which the crime was committed, then, on the facts of this case, it would be improper to award restitution under the MVRA. The Information charges Adorno with the solicitation, demand, and acceptance of payments and business interests, with the intent to be influenced and rewarded in connection with business, in violation of 18

U.S.C. § 666(a)(1)(B). While Adorno's official conduct may have, in fact, been influenced, a conviction for bribery does not require such a showing. *See United States v. Pretty,* 98 F.3d 1213, 1219 (10th Cir.1996) (18 U.S.C. § 666(a)(1)(B) "requires only intent to be influenced, rather than actual influence"), *cert. denied,* 520 U.S. 1266, 117 S.Ct. 2436, 138 L.Ed.2d 197 (1997). And, on the record before this court, the extent to which Adorno was influenced, and the impact of such influence on HPD's projects, cannot be determined. Put another way, aside from the assertion that Adorno deprived the City of his honest services, neither the City nor the government offers a basis upon which to conclude that, in this case, the offense of conviction is one that was committed by fraud or deceit, or that his offense caused a loss to the City within the meaning of the MVRA.[5] On this record, to simply import a theory of honest services fraud into a charge of bribery—especially where a charge of honest services fraud was apparently available—eviscerates the doctrinal requirement that restitution is applicable only with respect to the offense of conviction.[6]

---

intending to be influenced or rewarded in connection with any business ... of such organization, ... involving any thing of value of $5,000 or more," shall be subject to fine or imprisonment or both. 18 U.S.C. § 666(a)(1)(B).

**5.** As set forth above (*see* p. 1, n. 1, *supra* ), there is no evidence that Adorno caused contract prices to be inflated by the amount of the $100,000 bribe, and the amount of Adorno's salary is the only other loss alleged.

**6.** The cases relied upon by the City do not persuade me otherwise. In *United States v. Coffin,* 2011 WL 4962395, 2011 U.S. Dist. LEXIS 120256 (E.D.N.Y., Oct. 18, 2011), the defendants were convicted of accepting bribes in connection with their employment by Consolidated Edison Co. of New York, Inc. ("Con Ed"). The court concluded that each defendant "was involved in at least one *scheme to*

*defraud* [Con Ed] in which he accepted bribes in exchange for approving false expenditures on invoices." 2011 WL 4962395, at *1, 2011 U.S. Dist. LEXIS 120256, at *5 (emphasis added). Concluding, also, that Con Ed was "directly harmed" by the conduct, "including by being deprived of the honest and faithful services of its employees," the *Coffin* court held that, "Under *these* circumstances ... each defendant was convicted of an offense committed by fraud or deceit and that [Con Ed] was the victim of such offense. Thus, [Con Ed] is entitled to restitution under the MVRA." *Id.* at *1, 2011 U.S. Dist. LEXIS 120256 at **4–5 (emphasis added).
*United States v. Sapoznik,* 161 F.3d 1117, 1121–22 (7th Cir.1998), focused on the propriety of the amount, and not the fact, of restitution. In that case, the Seventh Circuit concluded that the district court did not abuse its discretion by awarding restitution in an amount equal to one-quarter of the salary of a

Finally, even if I were to accept that restitution should be awarded, I note the difficulty of calculating the amount of the restitution. The MVRA wisely provides, in 18 U.S.C. § 3663A(c)(3)(B), that, if the court finds that "complex issues of fact related to the cause or amount of the victim's losses would complicate or prolong the sentencing process to a degree that the need to provide restitution to any victim is outweighed by the burden on the sentencing process," then the court may choose not to award restitution. *See United States v. Zangari*, 677 F.3d 86, 93 (2d Cir.2012).

This is such a case. There are issues both as to the cause and the amount of the City's losses. That is, as noted above, there are issues as to whether the bribery in fact caused a loss to the City within the meaning of the MVRA, and there are issues as to how to calculate the loss if we assume the bribery in fact caused a loss.[7]

In *Sapoznik (see* n. 6, *supra* ), the court chose to award as restitution to a victim employer a percentage of the defendant's salary, even while acknowledging the arbitrariness of estimating a percentage of salary. *See* 161 F.3d at 1121–22. However, in this case, the parties' submissions make clear that any estimate would be too arbitrary to sustain and that a hearing to achieve a non-arbitrary result would involve protracted proceedings that, even if conducted, might well not produce a non-arbitrary result.

The City seeks 25% of Adorno's salary for the two-year period during which the bribe was paid, but, other than its contention that "this amount is consistent with the case law awarding a reasonable approximation of the difference in the value of services actually rendered and the value of the services of an honest, faithful employee," it offers no basis for picking this percentage as reflective of its "loss." (City Letter, February 6, 2013, at 3.) Similarly, after acknowledging at the February 19, 2013 hearing that there was "no way of really coming up with a reasonable" number and suggesting that it was "within the court's discretion to decide what would be appropriate" (Hr'g Tr., Feb. 19, 2013, at 8), the government subsequently suggested that the award be based on the percentage of projects corrupted by the bribes, out of the total number of projects supervised by the defendant, or on the court's estimate of the difference between the value of honest services and Adorno's dishonest services. As for the defendant, he argues that no actual loss has occurred, insofar as there is no evidence that Adorno's performance of his duties actually caused a loss, and that the subject building projects amount to only about 10%, and not 25%, of the total number of projects Adorno supervised (a matter that the court cannot determine on the current record). He suggests that the amount of time he spent on the projects would be a fairer estimate; he also notes, however, that he has no records to support that analysis, as the records are within the City's control.

In sum, recognizing the principles and values of the MVRA, but also the limitations involved in making a legitimate and fair calculation of restitution in this case,

---

police chief who had pled guilty to bribery under the RICO statute, 18 U.S.C. § 1962(c). *Sapoznik*, 161 F.3d at 1121. While the Court's conclusion relies upon the assumption that bribery is included within the MVRA, it is not clear, from the decision, whether there was ever any challenge to that, as there is no discussion of it.

7. In this regard, I note that the City appears to acknowledge the difference between recovery for a victim under the strict terms of the MVRA and the City's possible recovery, under other laws, of Adorno's entire salary, based upon the disloyalty that the acceptance of bribes signifies.

an award of restitution cannot be made. For this reason, and the reasons stated earlier, the request for restitution is denied.[8]

SO ORDERED.

8. Nothing in this Opinion should be read so as to foreclose the possibility of the City's entitlement to restitution of Adorno's salary through the assertion of civil claims against him under laws and principles separate from those applicable under the MVRA.