*United States v. Razzouk*

# In the
# United States Court of Appeals
## For the Second Circuit

August Term, 2019

(Argued: October 1, 2019   Decided: October 2, 2020)

Docket No. 18-1395

UNITED STATES OF AMERICA,

*Appellee,*

–v.–

SASSINE RAZZOUK,

*Defendant-Appellant.*

B e f o r e :

WALKER and CARNEY, *Circuit Judges*, and KOELTL, *District Judge*.[1]

Defendant-Appellant Sassine Razzouk appeals from an April 25, 2018 judgment of conviction and sentence. In 2011, Razzouk pleaded guilty to one count of accepting bribes, in violation of 18 U.S.C. § 666(a)(1)(B), and three counts of tax evasion, in violation of 26 U.S.C. § 7201, in connection with a bribery scheme that he and others perpetrated while he was an employee of Consolidated Edison Company of New York,

---

[1] Judge John G. Koeltl, of the United States District Court for the Southern District of New York, sitting by designation.

Inc. ("Con Edison"). As part of the sentence it imposed in 2018, the district court ordered Razzouk to pay $6,867,350.51 in restitution to Con Edison and $1,982,238.34 to the Internal Revenue Service ("IRS"). On appeal, Razzouk argues that the district court erred in its restitution order by (1) incorrectly determining that his bribery conduct was "an offense against property" under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(ii), and (2) incorrectly calculating the loss to Con Edison caused by the scheme. The government, in turn, advocates a remand of the restitution order in light of *Lagos v. United States*, 138 S. Ct. 1684 (2018), to allow the district court to reconsider its inclusion of certain investigatory costs incurred by Con Edison in the restitution order total. After review, we reject Razzouk's argument that the MVRA does not support the restitution order to Con Edison. As urged by the government, however, we vacate the order and remand to the district court to allow that court to address the effect of *Lagos* on its calculation of the restitution amount. In a summary order filed concurrently with the Opinion, we decide the other issues raised by Razzouk in his appeal.

The district court's order of restitution is VACATED and the cause is REMANDED for further proceedings consistent with this Opinion.

———————————

FRANK TURNER BUFORD (David C. James, Claire S. Kedeshian, *on the brief*), *for* Seth DuCharme, United States Attorney for the Eastern District of New York, Brooklyn, NY, *for Appellee United States of America*.

STEVE ZISSOU, ESQ., Bayside, NY, *for Defendant-Appellant Sassine Razzouk.*

———————————

CARNEY, *Circuit Judge*:

Defendant-Appellant Sassine Razzouk appeals from an April 25, 2018 judgment of conviction and sentence. In 2011, Razzouk pleaded guilty to one count of accepting bribes, in violation of 18 U.S.C. § 666(a)(1)(B), and three counts of tax evasion, in violation of 26 U.S.C. § 7201, in connection with a bribery scheme that he and others perpetrated while he was an employee of Consolidated Edison Company of New York,

2

Inc. ("Con Edison"). As part of the sentence it imposed in 2018, the district court ordered Razzouk to pay $6,867,350.51 in restitution to Con Edison and $1,982,238.34 to the Internal Revenue Service ("IRS"). On appeal, Razzouk argues that the district court erred in its restitution order by (1) incorrectly determining that his bribery conduct was "an offense against property" under the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663A(c)(1)(A)(ii), and (2) incorrectly calculating the loss to Con Edison caused by the scheme. The government, in turn, advocates a remand of the restitution order in light of *Lagos v. United States*, 138 S. Ct. 1684 (2018), to allow the district court to reconsider its inclusion of certain investigatory costs incurred by Con Edison in the restitution order total. After review, we reject Razzouk's argument that the MVRA does not support the restitution order to Con Edison. As urged by the government, however, we vacate the order and remand to the district court to allow that court to address the effect of *Lagos* on its calculation of the restitution amount. In a summary order filed concurrently with the Opinion, we decide the other issues raised by Razzouk in his appeal.

The district court's order of restitution is VACATED and the cause is REMANDED for further proceedings consistent with this Opinion.

## BACKGROUND

### I.     Offense Conduct

According to admissions made during his 2011 plea allocution, between approximately 2007 and 2011 Razzouk worked for Con Edison as a manager in its electrical design engineering department. During that period, and in his role as manager there, Razzouk manipulated Con Edison's contractor bidding systems to benefit a company named Rudell & Associates ("Rudell"), which was run by his friend

3

Rodolfo Quiambao. In his allocution, Razzouk described how he "provided [Rudell] with additional Con Edison work, assist[ed] [Rudell] with bids[,] and approv[ed] payment[s] to [Rudell] in contracts with Con Edison for things [he] was not entitled to [approve]." App'x 51. The two forensic accounting firms hired by Con Edison and its insurer to calculate the resulting losses each estimated that the scheme cost Con Edison approximately six million dollars in the form of overpayments made to Rudell.

With regard to income tax evasion, Razzouk admitted in 2011 that he failed to report the bribery payments as part of his taxable income in the relevant years: he said he was "aware that [he] owed more federal income tax for the calendar [years] 2007, 2008, and 2009 than [he] declared on [his] tax return[s]," App'x 52-53, and confessed that he "intentionally did not file the proper amount of taxes that [he] owed . . . in an effort to evade income tax[es]." *Id.*

## II.    Procedural History

In January 2011, the government filed a criminal complaint against Razzouk. In June of that year, pursuant to a cooperation agreement (the "Cooperation Agreement" or "Agreement"), Razzouk waived indictment and pleaded guilty to one count of accepting bribes in connection with an organization receiving federal funds, in violation of 18 U.S.C. § 666(a)(1)(B),[2] and three counts of tax evasion, in violation of 26 U.S.C.

---

[2] Section 666(a)(1)(B) of title 18 provides in relevant part that anyone who "corruptly . . . accepts or agrees to accept, anything of value from any person, intending to be influenced or rewarded in connection with any business, transaction, or series of transactions of such organization, government, or agency [receiving federal funds] . . . shall be fined under this title, imprisoned not more than 10 years, or both."

§ 7201.[3] Under the Cooperation Agreement, Razzouk undertook (among other things) to cooperate with the government's further investigations, in return for (among other things) the government's conditional promise to file a U.S.S.G. § 5K1.1 letter informing the sentencing court of Razzouk's substantial assistance and to recommend a downward departure from his Guidelines sentence.

After a period of cooperation resulting in additional indictments of persons—including Quiambao—involved with the scheme, in 2015 Razzouk had a change of heart (as the government later learned). Breaching his obligations under the Agreement, Razzouk revealed to Quiambao details about his cooperation with the government and offered to testify falsely at Quiambao's upcoming criminal trial. (As described in the accompanying summary order, Razzouk's revelations to Quiambao had implications for aspects of his sentencing and bear on aspects of his appeal that are not directly relevant here but are discussed in the Order.)

Three years later, in 2018—on the eve of his sentencing—Razzouk moved to withdraw his guilty plea, arguing that his factual allocution to bribery at the 2011 change-of-plea hearing did not provide a sufficient factual basis for his plea and therefore ran afoul of Fed. R. Crim. P. 11(b)(3). As a result of this and other developments, the government did not file a § 5K1.1 letter in connection with Razzouk's sentencing.

---

[3] Section 7201 of title 26 provides that "[a]ny person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $100,000 . . . or imprisoned not more than 5 years, or both, together with the costs of prosecution."

The district court denied Razzouk's motion and sentenced him primarily to a 78-month term of incarceration, also ordering him to pay a total of $6,867,350.51 in restitution to Con Edison and its insurer, and $1,982,238.34 to the IRS. The court's restitution order directing payment to Con Edison rested on its determination that Razzouk's conviction was for a "crime against property" within the meaning of the MVRA, making the payment order mandatory.

The court calculated the restitution that Razzouk owed Con Edison as follows:

$5,902,661.00 for losses attributable to the defendant's bribery scheme;
$193,668.01 for losses attributable to the defendant's faithless work;
$771,021.50 for Con Edison's investigation costs; and
[p]rejudgment interests on all of the above losses.

App'x 180.[4] The restitution that Razzouk owed to the IRS was comprised of back taxes due for tax years 2007, 2008, and 2009, as well as interest accrued on those amounts from their due dates through October 2012, when Razzouk filed amended returns.

In this Opinion, we address the validity of various aspects of the district court's restitution order. We consider Razzouk's other challenges to his conviction and sentence in a summary order filed concurrently with this Opinion.

**DISCUSSION**

On appeal, Razzouk makes two types of attack on the restitution order. First, he contends that the district court erred as a matter of law by applying the MVRA to his bribery offense, urging that the MVRA does not support a restitution order to Con

---

[4] Under an agreement between Con Edison's and its insurer, National Union Insurance Co., $5,652,661 of the restitution payment was directed to the insurer as reimbursement for its earlier coverage of Con Edison's losses.

Edison. Second, he assails the district court's calculation of restitution owed to Con Edison.

Separately, the government supports vacatur of the restitution order and a remand in light of the Supreme Court's 2018 decision in *Lagos* to permit the district court to reconsider its inclusion of investigative costs incurred by Con Edison in the restitution order that addressed the utility's losses. Razzouk does not oppose.

## I. Standard of Review

We review a restitution order "deferentially, and we will reverse only for abuse of discretion." *United States v. Boccagna*, 450 F.3d 107, 113 (2d Cir. 2006).[5] To identify an abuse of discretion, "we must conclude that a challenged ruling rests on an error of law, a clearly erroneous finding of fact, or otherwise cannot be located within the range of permissible decisions." *United States v. Pearson*, 570 F.3d 480, 486 (2d Cir. 2009) (per curiam). With regard to loss amounts, "the MVRA requires only a reasonable approximation of losses supported by a sound methodology." *United States v. Gushlak*, 728 F.3d 184, 196 (2d Cir. 2013).

## II. The Mandatory Victims Restitution Act

Razzouk first contends the district court erred when it determined that the MVRA applies to his conviction for bribery under 18 U.S.C. § 666(a)(1)(B). The MVRA requires that restitution be made by a defendant convicted of certain categories of crimes "in which an identifiable victim or victims has suffered a physical injury or

---

[5] Unless otherwise noted, our Opinion omits all alterations, citations, footnotes, and internal quotation marks in quoted text.

pecuniary loss." 18 U.S.C. § 3663A(c)(1)(B). As relevant here, the statute reads as follows:

> This section shall apply in all sentencing proceedings for convictions of, or plea agreements relating to charges for, any offense--
>
>     (A) that is--
>
>         (i) a crime of violence, as defined in section 16;
>
>         (ii) an offense against property under this title, or under section 416(a) of the Controlled Substances Act (21 U.S.C. 856(a)), including any offense committed by fraud or deceit;
>
>         . . .
>
>     (B) in which an identifiable victim or victims has suffered a physical injury or pecuniary loss.

18 U.S.C. § 3663A(c)(1). As set forth above, subsection (ii) provides that one category of crime to which the MVRA applies is "offense[s] against property under this title [*i.e.*, title 18] . . . including any offense committed by fraud or deceit." *Id.* § 3663A(c)(1)(A)(ii) (the "offense-against-property provision"). The MVRA does not define the phrase "offense against property."

A. *"Offenses against property" under the MVRA*

Razzouk observes that the text of § 666(a)(1)(B) does not include the term "property" and submits that the elements of bribery under § 666(a)(1)(B) do not necessarily implicate "property." He cites a district court opinion for the proposition (adopted by that court) that the "elements of the offense of bribery concerning programs receiving Federal funds, under 18 U.S.C. § 666(a)(1)(B), do not make it an offense against property, including one committed by fraud or deceit." *United States v. Adorno*, 950 F. Supp. 2d 426, 429 (E.D.N.Y. 2013). It follows, he reasons, that the MVRA

8

does not apply to his bribery conviction and does not authorize the court to order restitution to the crime's victims.

We now reject that argument. When determining whether the MVRA offense-against-property provision applies to a conviction, courts may consider the facts and circumstances of the crime that was committed to determine if it is an "offense against property" within the meaning of the MVRA. If those facts and circumstances implicate a crime against property, the MVRA requires the court to enter a related order of restitution. In Razzouk's case, consideration of those facts and circumstances leads to the conclusion that, as the district court determined, Razzouk's crime is covered by the MVRA's offense-against-property provision and he may be ordered to make restitution to the crime's victims.

At the threshold, we note that our Court has in the past assumed without deciding that courts may consider the facts of the crime of conviction in determining whether to apply the MVRA. *See, e.g.*, *United States v. Pescatore*, 637 F.3d 128, 139 (2d Cir. 2011) (reviewing facts of defendant's conduct rather than elements of offense of operating vehicle "chop shops" in violation of 18 U.S.C. § 2322 to determine if it is an "offense against property" that was "committed by fraud or deceit"); *United States v. Bengis*, 631 F.3d 33, 40 (2d Cir. 2011) (analyzing whether crimes of smuggling under 18 U.S.C. § 371 and violations of the Lacey Act, 16 U.S.C. § 3372(a)(2)(A), are offenses against property and concluding that "[t]he defendants' *conduct* in depriving South Africa of that revenue is, therefore, an offense against property." (emphasis added)). We have not answered the related "open question of whether the language 'committed by fraud or deceit'" in § 3663A(c)(1)(A)(ii) of the MVRA "refers to the elements of an

9

offense or the manner in which the defendant commits the offense." *United States v. Battista*, 575 F.3d 226, 230–31 (2d Cir. 2009).

But in assessing Razzouk's position we look first, of course, to the text of the MVRA. The offense-against-property provision refers to the way in which some offenses "against property" are "committed": thus, the statute's description of the category specifies that a crime against property "include[s] any offense committed by fraud or deceit." 18 U.S.C. § 3663A(c)(1)(A)(ii). The plain text of the statute thus suggests that the way the crime is carried out is relevant to its application. In *Taylor v. United States*, the Supreme Court long ago emphasized that a statute's use of the word "committed" suggests a focus on the manner of commission and stands in contrast to a reference to a conviction for a "generic" crime, which requires instead a focus on the crime's elements. 495 U.S. 575, 599–600 (1990).[6] In light of this language, it followed in *Taylor* that the "the facts of each defendant's conduct" were irrelevant to the application of that statute. *Id.* at 601.

In addition to using the past participle "committed" and referring to fraud and deceit as possible means of commission, the MVRA's description of "offenses against property" makes no mention of the elements of any generic crime and provides no other signal that examination of such elements serves its purpose. The statute's approach to offenses against property thus differs markedly from its definition and treatment of another category of crime for which it requires restitution: that is, "crime[s]

---

[6] Thus, in *Taylor*, the Court stressed that the crime relevant there and defined by 18 U.S.C. § 924(e)(1), which provides more severe punishment for certain repeat offenders, "refers to 'a person who . . . has three previous *convictions' for*—not a person *who has committed*—three previous violent felonies or drug offenses." *Id.* at 600 (emphasis added).

of violence, as defined in [18 U.S.C. §] 16." 18 U.S.C. § 3663A(c)(1)(A)(i). Section 16(a) of title 18, in turn, unmistakably uses an "elements" formulation, defining a "crime of violence" as one that has as "an *element* the use, attempted use, or threatened use of physical force against the person or property of another." *Id.* § 16(a) (emphasis added).[7] The contrast in these neighboring statutory sections, enacted in a single bill, thus highlights that Congress could have used such an "elements" formulation when it described an "offense against property"; that it did not suggests that we should treat the difference as intentional and significant. Although these signals are subtle, they suggest that a court may look to the manner in which a particular crime was committed to determine if it is an "offense against property" such as would trigger a restitution obligation under the MVRA.

---

[7] In subsection (b), § 16 also provides that the phrase "crime of violence" includes "any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 16(b). Although no court appears to have considered § 16(b)'s constitutionality as incorporated into the MVRA, the Supreme Court held in *Sessions v. Dimaya*, 138 S. Ct. 1204, 1215–16 (2018), that § 16(b) was unconstitutionally vague as incorporated into the definition of "aggravated felony" provided in the Immigration and Nationality Act. But, regardless of its constitutionality (which is not relevant here), this provision too—in effect when the MVRA was passed—uses language that contrasts markedly with the MVRA's offense-against-property phrase. It is language that in the past we interpreted to require application of the categorical approach: "Under the language of the statute, a § 16(b) 'crime of violence' is analyzed 'by its nature.' We believe that this language compels an analysis that is focused on the intrinsic nature of the offense rather than on the factual circumstances surrounding any particular violation." *Dalton v. Ashcroft*, 257 F.3d 200, 204 (2d Cir. 2001). In our view, the framing of § 16(b), too, thus highlights its difference from the construction we ascribe to the MVRA phrase "offense against property."

This approach is in keeping, too, with the broad remedial purposes of the MVRA. As we have explained in the past, the statute is designed "to make victims of crime whole, to fully compensate these victims for their losses and to restore these victims to their original state of well-being." *United States v. Maynard*, 743 F.3d 374, 377–78 (2d Cir. 2014); *see also* S. Rep. No. 104-179, at 12–14 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 925–27 (describing MVRA's primary goal as "to ensure that the loss to crime victims is recognized, and that they receive the restitution that they are due."). To carry out such a sweeping directive and to ensure that victims are compensated for losses to their property, Congress could reasonably have intended that courts look to whether the crime in fact caused damage to a victim's interests in personal or other property so that the loss or damage could be estimated and payment of restitution ordered.[8] We see no reason to limit arbitrarily victims' compensation for property loss to those crimes—Hobbs Act robbery, for example—in which some action involving "property" is ordinarily referred to as an element.[9]

In holding that the court may look to the facts and circumstances of the offense of conviction to determine if the MVRA authorizes a restitution order, we are in accord with those of our sister circuits that have addressed the question. *See United States v. Ritchie*, 858 F.3d 201, 210 (4th Cir. 2017) ("Congress could not have intended to exclude from the broad, mandatory reach of the MVRA those unfortunate victims who suffer

---

[8] The statute lays out how restitution should be accomplished for "offense[s] resulting in damage to or loss or destruction of property of a victim of the offense," 18 U.S.C. § 3663A(b)(1), including return of the property or payment for the value of property lost.

[9] The statutory definition of Hobbs Act robbery uses the term "property." 18 U.S.C. § 1951(b)(1) ("The term 'robbery' means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will . . . .").

property loss as a result of an offense that doesn't contain as an element a reference to 'property.'"); *United States v. Collins*, 854 F.3d 1324, 1334 (11th Cir. 2017) (declining to "apply the categorical approach" that would limit courts to looking at the elements of a crime); *see also United States v. Sawyer*, 825 F.3d 287, 292–93 (6th Cir. 2016) (analyzing, without discussion of the larger question, the manner in which the crime was committed).

Accordingly, in determining whether the MVRA requires Razzouk to make restitution for losses caused by his bribery offense under § 666(a)(1)(B), we look to the manner in which Razzouk committed the crime and the facts and circumstances of the crime.

B. *The facts and circumstances of Razzouk's bribery crime*

In his plea colloquy, Razzouk admitted that his actions deprived Con Edison of a property interest—a pecuniary interest—in the form of payments that it made to Rudell for which Con Edison received no consideration. We have already determined that such a deprivation qualifies as one "against property": In *Bengis*, we held that a rock lobster smuggling scheme constituted an "offense against property" under the MVRA and supported a restitution order because "defendants' conduct deprived [the victim] of proceeds from the sale of the [smuggled goods], *i.e.*, money to which it was entitled by law." 631 F.3d at 40. Analogously, Razzouk deprived Con Edison of a property interest in its funds through his facilitation of its payments to Rudell for phantom work. On *de novo* review of this question of law and clear error review of the relevant factual determinations, we conclude that the district court made no error in determining that

13

the MVRA applies to Razzouk's bribery crime against Con Edison and in awarding Con Edison restitution for its loss.[10]

### III.   Calculation of Loss to Con Edison

Razzouk's second argument presents solely an issue of fact: whether the forensic auditors engaged by Con Edison and its insurer accurately calculated the loss to the utility that was caused by Razzouk's criminal conduct.

The accounting firm KPMG provided forensic auditing services to Con Edison in this matter, investigating eleven contracts performed by Rudell for Con Edison during the relevant period. Under those eleven contracts, KPMG determined, Con Edison paid Rudell close to $32 million. In its review, KPMG identified charges for work that was not performed; charges for duplicate work; and overcharges of various kinds. In these three categories, Rudell's improper charges totaled slightly over $6 million, according to KPMG's study.

Forensic accounting expert Grassi & Co. ("Grassi"), retained by Con Edison's insurer, National Insurance Co., also conducted a loss calculation. Grassi returned the figure ultimately relied on by the district court as representing the relevant loss: approximately $5.9 million, similar to but slightly below KPMG's estimate.

---

[10] Razzouk's citation to *Adorno*, 950 F. Supp. 2d 426, which ruled that an offense under § 666(a)(1)(B) was not an "offense against property," as mentioned above, does not persuade us otherwise. In *Adorno*, the court determined on the record before it that "the extent to which [the defendant] was influenced [by the illegal payment], and the impact of such influence on [the victim], cannot be determined." *Id.* at 430. The *Adorno* court therefore declined to require restitution to the victim. In this case, in contrast, the harm to a Con Edison's property interest was all too well documented.

Razzouk offers no persuasive argument for the position that the district court clearly erred by adopting the Grassi calculation. Razzouk cites three instances of calculations, totaling approximately $189,000, as illustrative of fatal errors in the two forensic accounting analyses. The district court considered and rejected Razzouk's assertion of error, as do we, and for the same reasons: Razzouk's pleas that he had no control over certain payments or that the payments were accidentally made are persuasively rebutted by the record evidence.[11]

Razzouk identifies no systematic errors in KPMG and Grassi's analyses, which almost perfectly overlap. We view the district court's estimate of Con Edison's losses, based on the Grassi analysis and generally consonant with KPMG's conclusion, to be a "reasonable approximation of losses supported by a sound methodology," *Gushlak*, 728 F.3d at 196. Apart from the question of investigative costs, discussed below, we identify no clear error in the district court's determination of the loss suffered by Con Edison as a basis for its restitution order.

## IV.    Investigative Costs

The government does not oppose a limited remand to allow the district court to analyze whether, under the Supreme Court's 2018 decision in *Lagos*, the district court's inclusion in the restitution order of $771,021.50 to cover costs incurred by Con Edison to investigate the crime was lawful. Appellee's Br. at 50. Razzouk makes no arguments

---

[11] For example, Razzouk complains that an approximately $38,000 payment was included in the restitution total even though he had no control over that project. The government showed that those with the requisite control reported to Razzouk, however, and the government also offered an email that showed that Rudell never performed the work for which it was paid $38,000.

15

regarding *Lagos*'s applicability. We agree with the government that a remand is appropriate.

The district court included $771,021.50 in investigative costs in the restitution total, ruling that "Con Edison is entitled to restitution . . . for the costs that it incurred in investigating the wrongdoing of Razzouk." App'x 178. In addition to restitution for losses caused by the crime, the MVRA requires "reimburse[ment]" to "the victim for lost income and necessary child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense." 18 U.S.C. § 3663A(b)(4). In *Lagos*, the Supreme Court clarified the meaning of "investigations" and "proceedings" in this provision as pertaining only to "*government* investigations and criminal proceedings." *Lagos*, 138 S. Ct. at 1688 (emphasis added). It declined to decide whether the MVRA would require payment of investigative costs incurred by a victim "during a private investigation that was pursued at a government's invitation or request." *Id.* at 1690. The district court did not consider whether the government had invited the investigation or if the MVRA should apply to such an investigation.

Accordingly, we vacate the district court's restitution order insofar as it covers investigative costs incurred by Con Edison, and we remand to the district court to consider in the first instance whether, and if so, how the limitations articulated in *Lagos* apply to this restitution order.[12]

---

[12] Razzouk makes two challenges to the district court's order that he make restitution to the IRS. Neither has merit. Razzouk argues first that he lawfully paid no tax on the bribe income reported in the amended returns that he filed in 2012 because, under 21 U.S.C. § 853(c), title to the money he received from Rudell vested immediately in the United States upon his ultimate forfeiture of the funds. But, by its terms, § 853(c) applies only to crimes defined under

16

**CONCLUSION**

For the foregoing reasons, the order of restitution is VACATED and the cause is REMANDED for further proceedings consistent with this Opinion.

---

chapter 13 of title 21 (regarding drug abuse prevention and control); it has no bearing here. *See* 21 U.S.C. § 853(a) (applicable only to "[a]ny person convicted of a violation of this subchapter or subchapter II" of chapter 13 of title 21); *id.* § 853(c) ("All right, title, and interest in property *described in subsection (a)* vests in the United States upon the commission of the act giving rise to forfeiture under this section." (emphasis added)); *Caplin & Drysdale, Chartered v. United States*, 491 U.S. 617, 619–23 (1989) (holding that § 853 authorizes forfeiture to the government of property acquired as a result of drug-law violations). Razzouk's bribery offense is not such a crime.

Razzouk also asserts that the government received notice in 2012 that he filed amended returns and, since it failed to object then, the government should be deemed to have waived its right under the Cooperation Agreement to seek restitution for previously unpaid taxes. But the Agreement provides that restitution related to the tax evasion charges will be "determined by the Court at sentencing." Gov. App'x 2. Since the provision specifies that restitution will be calculated—and, by implication, sought—at sentencing, we conclude that the district court correctly rejected Razzouk's waiver argument.