# United States Court of Appeals
## For the First Circuit

No. 09-2500

UNITED STATES OF AMERICA,

Appellee,

v.

CHRIS BRYANT,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Boudin, Circuit Judge,
Souter,* Associate Justice,
and Selya, Circuit Judge.

William W. Fick, Federal Public Defender Office, for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Carmen M. Ortiz, United States Attorney, was on brief for appellee.

May 26, 2011

---

*The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.

**BOUDIN, <u>Circuit Judge</u>**.  This case concerning sentencing is back before this court for the second time; the prior history is recounted in our decision on defendant Chris Bryant's first appeal, <u>United States</u> v. <u>Bryant</u>, 571 F.3d 147 (1st Cir. 2009).  To summarize briefly, in 2006, Bryant participated in two sales of crack cocaine to an undercover officer in Boston, Massachusetts. He was indicted in February 2007 for the second transaction and pled guilty in September to one count of distribution of cocaine base.  21 U.S.C. § 841(a)(1) (2006).

At issue in his sentencing was whether he qualified as a career offender under the sentencing guidelines, which provide:

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1(a) (2007).  Bryant was thirty-five at the time he committed the instant offense, which was a drug felony; the dispute at sentencing was whether he had two prior drug felonies that counted as the requisite career offender predicates.

The draft presentence report ("PSR") did not treat Bryant as a career offender; as a career offender predicate, it listed only a 1996 New York conviction for attempted sale of a controlled substance.  Both parties objected: the government said that the PSR

had omitted a 1997 Massachusetts conviction for conspiracy to violate state drug laws; Bryant objected both to the listing of the New York conviction, claiming that the government lacked documentation required by Shepard v. United States, 544 U.S. 13 (2005), and (on several grounds) to the listing of the Massachusetts conviction.

The probation officer then revised the PSR, accepting the government's objection but not Bryant's objections to the predicates and concluding that Bryant was a career offender. This designation increased the guidelines sentencing range from 18-24 months to 151-188 months. At the sentencing hearing, Bryant renewed his objections but the district court sided with the government. Pointing to mitigating factors, the district court sentenced Bryant to ninety months' imprisonment.

Bryant appealed, and, in our 2009 decision, this court held that the Massachusetts conviction did qualify as a predicate for career offender purposes. Bryant, 571 F.3d at 156, 158-59. As for the New York conviction, we agreed with the district court that the New York drug offense if proven would qualify as a career offender predicate under the guidelines, id. at 156-58; but the government had been unable to produce a judicial record of the fact of Bryant's New York conviction, relying instead on other evidence

that the district court had accepted without determining whether it was sufficiently reliable, id. at 153-56.[1]  We ruled:

> [The Massachusetts] conviction and the New York conviction, if proven, qualify as predicate offenses for career offender purposes.  However, we hold that the district court committed clear error in finding that the government met its burden to establish the existence of the prior New York conviction.  We therefore vacate Bryant's sentence and remand for further proceedings consistent with this opinion.

Id. at 161.

As for the remand, we left "it to the district court to decide how best to determine the reliability of the sources the government used to prove the fact of the New York conviction." Bryant, 571 F.3d at 156 n.6.  On remand, the government submitted three new documents to support its claim that Bryant had been convicted of the New York drug offense in question, specifically:

> a Certificate of Disposition Indictment, prepared by a New York court clerk in 2009 based on a review of the court's electronic records;
>
> a Sentence and Commitment Form, prepared by the New York court in 1996 and obtained from the correctional facility where Bryant was held; and

---

[1]In this initial go-around, the government, like the PSR, relied upon the incarceration record from the New York Department of Correctional Services as well as the criminal history record maintained by the National Crime Information Center and the New York State Police Information Network.

> a Certificate of Incarceration, prepared by
> the New York Department of Correctional
> Services in 2009.

The government also submitted for the first time an affidavit from the records coordinator at the correctional facility stating that the Sentence and Commitment form was received in the regular course of business and that she had never known the last two documents to be inaccurate.

The resentencing hearing took place in October 2009. A few days before the hearing, Bryant's counsel learned that transportation from prison had not been arranged and that Bryant would not be able to appear. Bryant's counsel tried to contact him, but Bryant could not be reached and was not brought to the hearing. At the hearing, Bryant's counsel stated that he was not in a position to waive any right Bryant might have involving his presence at the hearing.

The district court ruled that the defendant was not required to be present since the court was not considering a higher sentence than originally imposed.[2] Bryant's counsel argued that the new records were impermissible, that without them there was

---

[2]The district court may have been relying on United States v. DiPina, 230 F.3d 477, 485 (1st Cir. 2000), which made a general statement to this effect relating to allocution. While DiPina's disposition was correct on its facts, the general statement was overbroad, conflicting with the very precedent that DiPina cited for it, United States v. Garafano, 61 F.3d 113, 116-17 (1st Cir. 1995). Garafano makes clear that the procedural incidents on a remand depend primarily on the scope of the remand. Id. at 116.

insufficient proof, and that in any event a lower sentence should be imposed based on post-sentencing rehabilitation. Thereafter, the district court reaffirmed Bryant's career offender status and reimposed the original ninety-month sentence. Bryant again appeals.

The target of this appeal is the district court's conducting of the new sentencing hearing in Bryant's absence. The government says in a footnote that Bryant has forfeited the objection even though Bryant's counsel made clear at the hearing that he was not waiving Bryant's rights; the government's theory is that after the hearing, when the district court reserved decision, Bryant should in the interval have made a motion for a new hearing, at which he could have been present.

The district judge had told Bryant's counsel at the hearing when the "presence" objection was raised: "I understand. You're not waiving your client's right." When a party has asserted a position and the district judge has unambiguously rejected it, the party is not required to renew the request to preserve the claim for appeal. United States v. Caro-Muñiz, 406 F.3d 22, 28-29 (1st Cir. 2005). Perhaps one could argue that Bryant's counsel did not expressly insist on his client's presence; but this is not the government's argument and to boot is not very persuasive.

On the merits of the right-to-be-present claim, it is settled that the defendant himself has a right to be present at

both his trial and his sentencing; there are constitutional bases for this right, as well as common-law precedent, and it is reflected in the Federal Rules of Criminal Procedure.[3] The defendant is also entitled to a right "to allocute"--to make a personal plea and to provide information favorable to his position[4]--although under some precedent presence is a right in some sentencing proceedings where allocution is not required.

A resentencing, assuming that the full range of ordinary sentencing issues is open, is treated essentially the same as an initial sentencing for purposes of the presence requirement. Thompson v. United States, 495 F.2d 1304, 1307 (1st Cir. 1974); see also Fed. R. Crim. P. 43 advisory committee's note (1998 Amendments). But often a resentencing may be quite a different animal, depending on the basis for and nature of the resentencing and (in particular) any limitations that may have been placed on

---

[3]Fed. R. Crim. P. 43(a)(3) ("Unless this rule . . . provides otherwise, the defendant must be present at . . . sentencing."); United States v. Sepúlveda-Contreras, 466 F.3d 166, 171-72 (1st Cir. 2006); United States v. Ferrario-Pozzi, 368 F.3d 5, 8 (1st Cir.), cert. denied, 543 U.S. 883 (2004); see generally Kentucky v. Stincer, 482 U.S. 730, 745 (1987); United States v. Gagnon, 470 U.S. 522, 526 (1985) (per curiam); Mempa v. Rhay, 389 U.S. 128, 134 (1967).

[4]Fed. R. Crim. P. 32(i)(4)(A)(ii) ("Before imposing sentence, the court must . . . address the defendant personally in order to permit the defendant to speak or present any information to mitigate the sentence . . . ."); United States v. Gonzalez-Melendez, 594 F.3d 28, 38 (1st Cir. 2010); see generally United States v. Behrens, 375 U.S. 162, 165-66 (1963); Green v. United States, 365 U.S. 301, 304 (1961).

-7-

the scope of the resentencing by an appellate court that remanded the original sentence for further proceedings.

Any alteration of the original judgment imposing the sentence could be called a "resentencing"--the word has no definitive meaning--but whether the defendant's presence and an opportunity to allocute are required has in practice turned on whether requiring these safeguards made sense in the context of the proceedings. Even in an initial sentencing, portions of the proceeding--say, a hearing on a strictly legal issue--may not require the defendant's presence. Fed. R. Crim. P. 43(b)(3)-(4) (listing exceptions to the presence requirement).

Resentencings are various in kind and many are very narrow. At one extreme, the resentencing ordered may be as unconstrained and open-ended as an initial sentencing; but at the other extreme, a remand may be so focused and limited that it involves merely a technical revision of the sentence dictated by the appeals court and calls for no formal proceeding--say, modifying the judgment to cut back to its legally permitted length a supervised release term that exceeded what the statute permits.

Thus, the government has had no difficulty citing to us a number of our own cases where we have deemed the defendant's presence at resentencing to be unnecessary,[5] and there are other

_____

[5]United States v. Santos-Rios, 151 F. App'x 2, 4 (1st Cir. 2005) (per curiam); United States v. Barnes, 244 F.3d 172, 178 (1st Cir. 2001); United States v. Sabatino, No. 92-1058, 1992 WL 122285,

-8-

such decisions not cited by the government. Most of these can easily be distinguished from this case, but they underscore the fact that "resentencing" is not a unitary phenomenon. The federal criminal rules themselves identify certain classes of resentencing proceedings that categorically do not require the defendant's presence. Fed. R. Crim. P. 43(b)(3)-(4).

So, whether a court is considering a defendant's "right to be present" or a government claim of "harmless error" where such a right was disallowed, one should start by asking just what was open to the district court on remand. Here, the government claims that the only issue open was whether reliable evidence supported a finding that the defendant had been convicted of the New York drug offense alleged by the government--at least if the district court found, as it did, that the documents (here, three new ones) did support its original conclusion.

That we "vacated" the existing sentence does not preclude the government's claim; most remands of a sentence vacate the existing sentence regardless of the further proceedings required. But while our Bryant decision told the district court to reexamine the reliability of the evidence offered to establish the New York conviction, our decision did not say that this was the only thing the district court could consider or forbid the district court from

_____

at *1 (1st Cir. June 8, 1992) (per curiam); United States v. De Los Santos-Himitola, 924 F.2d 380, 382-83 (1st Cir. 1991).

-9-

reconsidering the sentence in any other respects. Indeed, the remand said nothing about <u>new</u> documents to confirm the prior conviction, but the district court properly allowed them.

The government points to <u>United States</u> v. <u>Ticchiarelli</u>, 171 F.3d 24 (1st Cir.), <u>cert. denied</u>, 528 U.S. 850 (1999), to support its claim that the remand was limited, but it overreads the case. <u>Ticchiarelli</u> involved the so-called mandate rule, which prevents a district court on remand from re-litigating issues decided by the appellate court on the first go-around, <u>United States</u> v. <u>Moran</u>, 393 F.3d 1, 7 (1st Cir. 2004), and the court noted as well that a party ordinarily cannot raise for the first time on remand issues that it could and should have litigated on the original appeal, <u>Ticchiarelli</u>, 171 F.3d at 32.[6]

<u>Ticchiarelli</u> also made clear that what is open on remand depends upon what the court of appeals determined:

> [U]pon a resentencing occasioned by a remand, unless the court of appeals [has expressly directed otherwise], the district court may consider only such new arguments or new facts as are made newly relevant by the court of appeals' decision--whether by the reasoning or by the result.

---

[6]Although the latter limitation is sometimes conflated with the mandate rule, <u>United States</u> v. <u>Ellis</u>, 619 F.3d 72, 73 (1st Cir. 2010) (per curiam), <u>cert. denied</u>, 131 S. Ct. 1623 (2011), it arises because "the aggrieved party is deemed to have forfeited any right to challenge that particular decision at a subsequent date." <u>Id.</u> (quoting <u>United States</u> v. <u>Bell</u>, 988 F.2d 247, 250 (1st Cir. 1993)).

-10-

171 F.3d at 32 (quoting United States v. Whren, 111 F.3d 956, 960 (D.C. Cir. 1997), cert. denied, 522 U.S. 1119 (1998)).  Whatever this may preclude as to arguments that were made and lost or should have been made but were not, it can hardly extend to arguments that a party could not reasonably have been expected to make in the prior sentencing.

Here, Bryant asked the district court, even if it continued to find him to be a career offender, to impose a lower sentence on several grounds, including his claimed rehabilitative efforts post-dating his original sentence.  This last issue could not have been raised on the appeal from the original sentence, so Ticchiarelli's rule cannot apply.  Cf. Ticchiarelli, 171 F.3d at 32-33.  And, in light of Pepper v. United States, 131 S. Ct. 1229 (2011), it is now clear that there is no bar to consideration of such evidence at a resentencing.  Id. at 1239-43.

In permitting such evidence to be considered, the Supreme Court in Pepper did not "preclude courts of appeals from issuing limited remand orders, in appropriate cases, that may render evidence of postsentencing rehabilitation irrelevant in light of the narrow purposes of the remand proceeding." 131 S. Ct. at 1249 n.17.  But while our remand in Bryant could have precluded the district court from doing anything other than reexamining the career offender issue, Bryant (as already noted) imposed no such limitation.

-11-

If a plausible argument for post-sentencing rehabilitation could be made, then we think that this entailed Bryant's presence at the sentencing hearing (and, in this case, a new opportunity to allocute). Such an argument would be directed not to a purely legal issue on which Bryant could add nothing but, at least as to the premise, to a factual one concerning the defendant's own efforts and attitudes. Ticchiarelli ought not be read to preclude Bryant from making an argument necessarily unavailable to him on the original appeal.

The government's strongest argument is that Bryant's absence, even if error, was harmless. See generally Gonzalez-Melendez, 594 F.3d at 38 (allocution); United States v. Ortiz-Torres, 449 F.3d 61, 74 (1st Cir.), cert. denied, 549 U.S. 941 (2006) (presence). In addition to relying upon Ticchiarelli's principle, the district court went on to say in its resentencing memorandum that it would impose the same sentence even in light of evidence of post-sentencing rehabilitation. Such an alternative statement often does resolve matters, but not always.

The district court originally imposed a below-guidelines sentence in light of Bryant's pre-sentencing rehabilitation efforts and his strong parental support for his children, two of whom suffer from handicaps (his daughter is mute and autistic). Conceivably the district court was also affected in varying downward by Bryant's own history--raised by an alcoholic and drug-

-12-

addicted mother and physically abused quite badly in his early years. And, although Bryant was technically a career offender, the two predicate offenses were seemingly somewhat modest in scope.

Quite possibly, whatever post-sentencing rehabilitation occurred would not alter the district court's view that the variance granted earlier was as far as the court should go. But, given that any such rehabilitation is a matter on which Bryant could speak personally, we are loathe to conclude for ourselves that his presence and statements at the hearing would have been futile. And we would need to be very confident of futility to find that denial of presence or allocution was harmless error.

We reject Bryant's suggestion that this court should order the matter heard on remand by a different district judge. In declining to consider post-sentencing rehabilitation, the district judge was striving to conform to our own prior precedents and did not have the benefit of Pepper. Ordinarily, district judges are free to keep or to reassign remanded cases in accordance with local rules and practice; nothing takes this case out of that category.

Bryant's sentence is vacated and the matter is remanded for resentencing based on a hearing at which Bryant's presence should be secured unless formally waived, at which he may allocute if he chooses to do so, and at which the issue of post-sentencing rehabilitation should be considered in accordance with Pepper.

It is so ordered.

-13-