16-3937
United States v. Bodouva

UNITED STATES COURT OF APPEALS

FOR THE SECOND CIRCUIT

_____

August Term, 2016

(Argued: February 28, 2017          Decided: March 22, 2017)

Docket No. 16-3937

_____

UNITED STATES OF AMERICA,

*Appellee,*

—v.—

CHRISTINE BODOUVA,

*Defendant-Appellant.*

_____

B e f o r e:

KATZMANN, *Chief Judge*, POOLER and LYNCH, *Circuit Judges*.

_____

Defendant-appellant Christine Bodouva appeals from the November 14, 2016 judgment of conviction entered against her on one count of embezzling funds from an employee benefit plan, namely her company's 401(k) plan (the "401(k) plan"), in violation of 18 U.S.C. § 664. The judgment included an order to forfeit $127,854.22, pursuant to 18 U.S.C. § 981(a)(1)(C). We affirm Bodouva's

conviction in a Summary Order issued contemporaneously with this Opinion. In this Opinion, we separately address Bodouva's argument that the district court (Caproni, *J.*) erroneously concluded that it had no discretion to reduce the forfeiture amount by the amount of restitutive payments Bodouva had made at the time of her sentencing. We hold that, in the absence of specific statutory authorization, a district court lacks the discretion to reduce the amount of a mandatory criminal forfeiture order by the amount of restitution payments. Because no statutory provision authorized such an offset in the present case, the district court did not err in concluding that it lacked the discretion to reduce the amount of Bodouva's forfeiture order.

Accordingly, we **AFFIRM** the judgment of the district court.

_____

DINA MCLEOD (Michael Ferrara, *on the brief*), Assistant United States Attorneys, *for* Joon H. Kim, Acting United States Attorney for the Southern District of New York, New York, NY.

MICHAEL GREGORY PATTILLO, JR. (Steven F. Molo, Jessica Ortiz, and Justin Ellis, *on the brief*), MoloLamken LLP, New York, NY and Washington, DC, *for Defendant-Appellant*.

_____

PER CURIAM:

Following a jury trial, defendant-appellant Christine Bodouva was convicted of one count of embezzling funds from her company's 401(k) plan in violation of 18 U.S.C. § 664. She appeals from her conviction and the $127,854.22 forfeiture order entered against her. We affirm Bodouva's conviction in the Summary Order issued contemporaneously with this Opinion. We write here solely to address Bodouva's challenge to the amount of her forfeiture order.

2

Bodouva argues that the district court (Caproni, *J.*) erred in concluding that it had no discretion to reduce the amount of Bodouva's forfeiture order by the amount of restitution Bodouva had already paid to her victims. We conclude that the district court was correct: it could not reduce the amount of the forfeiture order by the amount of any restitutive payments in the absence of specific statutory authorization to do so. Accordingly, we affirm the forfeiture aspect of the judgment entered against Bodouva.

## BACKGROUND

In 2012 and 2013, Bodouva served as Chief Operating Officer and Senior Vice President of architecture firm William N. Bodouva & Associates ("WNBA"). During this period, Bodouva embezzled funds from WNBA's 401(k) plan by withholding payments to the plan from employee salaries but not remitting the withheld monies to the plan. On March 16, 2016, Bodouva was indicted on one count of embezzling funds from an employee benefit plan subject to the Employee Retirement Income Security Act ("ERISA"), in violation of 18 U.S.C. §§ 2 and 664. The indictment against Bodouva contained a forfeiture allegation directing that Bodouva "shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section

3

2461(c), any property, real and personal, that constitutes or is derived from proceeds traceable to the commission of the offense alleged in Count One of this Indictment." 28 U.S.C. § 2461(c) provides that "[i]f a person is charged [and convicted] in a criminal case with a violation of an Act of Congress for which the civil or criminal forfeiture of property is authorized [and] the Government . . . include[s] notice of the forfeiture in the indictment. . ., the court shall order the forfeiture of the property." 18 U.S.C. § 981, the forfeiture statute noticed in the indictment in the present case, authorizes the forfeiture to the United States of "[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to a violation of [18 U.S.C. § 664]." 18 U.S.C. § 981(a)(1)(C); *see* 18 U.S.C. §§ 1956(c)(7)(A), 1961(1).

On April 8, 2016, after her indictment but before her trial, Bodouva paid $126,979.63 to WNBA's 401(k) plan. After her trial, in her sentencing submission and at her sentencing hearing, Bodouva urged the district court to reduce the amount of forfeiture imposed on Bodouva by the amount she paid to the 401(k) plan. In response, the government acknowledged that this Court had not addressed the specific question of whether criminal forfeiture amounts can be "offset" by restitutive payments but argued that the district court should not

4

apply any offset in Bodouva's case. The district court concluded that it had no discretion to apply any such offset and entered the forfeiture order against Bodouva in the full amount sought by the government.

## DISCUSSION

"We review a district judge's legal conclusions regarding forfeiture de novo." *United States v. Daugerdas*, 837 F.3d 212, 231 (2d Cir. 2016). Forfeiture and restitution were mandatory in the present case, and these two remedies may be imposed concurrently. 18 U.S.C. §§ 981(a)(1)(C), 3663A(a)(1), (c)(1)(A)(ii); 28 U.S.C. § 2461(c); *United States v. Torres*, 703 F.3d 194, 196, 203–04 (2d Cir. 2012). The sole point of contention is whether the district court could have reduced the amount of forfeiture imposed on Bodouva in light of her restitution payment.

### I.

"Restitution and forfeiture are authorized by different statutes and serve different purposes—one of remediating a loss, the other of disgorging a gain." *Torres*, 703 F.3d at 196. This twofold observation forecloses Bodouva's argument that the district court had discretion to apply an offset in her case. First, restitution and forfeiture are creations of distinct statutes, and Bodouva cannot point to any statutory language linking them together. Accordingly, "nothing in

5

the statutory scheme permitted the district court to reduce the mandated criminal forfeiture order because the defendant also had to satisfy her obligation to pay restitution" or had already substantially done so. *United States v. McGinty*, 610 F.3d 1242, 1248 (10th Cir. 2010). Moreover, in 18 U.S.C. § 981, Congress provided for reductions in forfeiture amounts resembling the offset requested here, but only in certain circumstances. *See* 18 U.S.C. § 981(a)(2)(B)-(C). Congress's authorization of reductions in specific circumstances makes its silence with respect to Bodouva's requested offset more compelling. Because the statutory schemes authorizing restitution and forfeiture are separate, district courts are bound not to reduce the amount of a mandatory criminal forfeiture order by the amount of past or future restitution payments, in the absence of specific statutory authorization to do so.

Second, the distinct purposes of forfeiture and restitution undercut any argument that, in the absence of an offset, the imposition of forfeiture and restitution amount to an unfair double disgorgement. "Criminal forfeiture is a form of punishment. As such, it is distinct from restitution or other remedial actions, which are intended to return the victim and the perpetrator to the status quo that existed before the violation took place." *United States v. Peters*, 732 F.3d

6

93, 101 (2d Cir. 2013). Bodouva's restitution to her victims serves a different purpose (remediating a loss) than her forfeiture obligation (disgorging a gain; punishment), *see Torres*, 703 F.3d at 196, and thus had no bearing on her punishment for her crime.[1]

Our sister circuits have reached the same conclusion on similar grounds. *See United States v. Newman*, 659 F.3d 1235, 1241 (9th Cir. 2011) ("In the absence of a statute authorizing a reduction in forfeiture, the district court may not reduce forfeiture because of an order of restitution to a victim or because the victim already has been made whole."); *McGinty*, 610 F.3d at 1248; *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007) ("While the focus of restitution is on the victim, forfeiture focuses on the defendant. In addition to forcing the disgorgement of dishonest profits, therefore, forfeiture is also a punitive action

---

[1] Bodouva relies on dicta to argue that the district court did have discretion to apply an offset in the present case. Neither of the cases she cites binds us or presents arguments helpful to Bodouva's cause. Although we did contemplate the possibility of a similar offset in *United States v. Kalish*, 626 F.3d 165 (2d Cir. 2010), we expressly stated that "we need not decide whether such an argument [concerning the possibility of an offset] would prevail." *Id.* at 169-70. In *United States v. Bengis*, 631 F.3d 33 (2d Cir. 2011), we remanded to the district court for entry of an order of restitution and "[left] to the district court's determination in the first instance all relevant issues relating to the amount of restitution, whether any off-set should apply, and if so, whether there should be one based on the [defendant's] forfeiture. . . . We express[ed] no view as to how such issues should be resolved." *Id.* at 41.

against the defendant."). We join them in holding that mandatory criminal forfeiture amounts may not be reduced by the amount of restitution in the absence of specific statutory authorization for such an offset.

II.

The district court lacked any specific statutory authorization to apply an offset in the present case. Bodouva claims that the district court could have reduced the amount of the forfeiture order against her pursuant to 18 U.S.C. § 981(a)(2)(B). The statutory provision noticed in the indictment against Bodouva requires her to forfeit "[a]ny property . . . which constitutes or is derived from *proceeds* traceable to" her crime. 18 U.S.C. § 981(a)(1)(C). (emphasis added). 18 U.S.C. § 981(a)(2) defines "proceeds" differently depending on the conduct involved in a defendant's crime. "In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term 'proceeds' means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services." 18 U.S.C. § 981(a)(2)(B). We have held that § 981(a)(2)(B) applies in, for example, insider trading cases because "[a] security is a 'lawful good[]' for the purposes of § 981(a)(2)(B), . . . which, if [purchased or sold] based upon improperly obtained

8

material nonpublic inside information, is 'sold . . . in an illegal manner.'" *United States v. Contorinis*, 692 F.3d 136, 145 n.3 (2d Cir. 2012) (quoting 18 U.S.C. § 981(a)(2)(B)). By contrast,

> [i]n cases involving illegal goods, illegal services, [and] unlawful activities, . . . the term 'proceeds' means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

18 U.S.C. § 981(a)(2)(A). We have held that "unlawful activities" include "inherently unlawful activit[ies], like say the sale of foodstamps, or a robbery." *Contorinis*, 692 F.3d at 145 n.3; s*ee, e.g.*, *United States v. Uddin*, 551 F.3d 176 (2d Cir. 2009) (applying § 981(a)(2)(A)'s definition in a case involving the sale of foodstamps).

Embezzlement, as in Bodouva's case, "cannot be done lawfully, and therefore is properly considered an 'unlawful activity' under § 981(a)(2)(A)." *Contorinis*, 692 F.3d at 145 n.3. Bodouva argues that § 981(a)(2)(B) applies because WNBA's 401(k) plan provided lawful investment services to WNBA employees and Bodouva merely provided these services in an illegal manner. According to Bodouva, her restitution payment to the 401(k) plan should therefore be treated as a "direct cost[]" and subtracted from the forfeiture amount. 18 U.S.C. § 981(a)(2)(B). Bodouva's argument misidentifies her criminal conduct. Her crime

was not the unlawful provision of services to WNBA's employees. Her crime was embezzlement. As Bodouva's counsel conceded at oral argument, there is simply no way to lawfully embezzle funds. Accordingly, the definition of proceeds provided in § 981(a)(2)(A) applies here, and there is no statutory authorization for an offset.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.